EL PUEBLO DE PUERTO RICO, apelado, *v.* GLORIA CABÁN TORRES, acusada y apelante.

*Número:* CR-85-24      *Resuelto:* 30 de junio de 1986

---

646

*Luis E. Saavedra González, Margarita Carrillo, Andrés H. Soto Morales, Carmen Ana Rodríguez Maldonado, Ivette Aponte Nogueras,* de la Sociedad para Asistencia Legal, abogados de la apelante; *Rafael Ortiz Carrión, Procurador General, Dora T. Peñagarícano, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

En el día de hoy ratificamos la norma a los efectos de que no intervendremos con la apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos a nivel de instancia excepto en casos en que un análisis integral de dicha prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia; correspondiéndole al apelante —de manera principal— señalar y demostrar la base para ello. Lo contrario, esto es, la intervención indiscriminada con la adjudicación de credibilidad que se realiza a nivel de instancia, significaría el caos y la destrucción del sistema judicial existente en nuestra jurisdicción.

## I

El Ministerio Fiscal radicó acusaciones contra la apelante Gloria Cabán Torres y su señora madre Elsie Torres Sánchez por la supuesta comisión de los delitos de conspiración, infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico y por el delito de asesinato en primer grado. [1] Se les imputó, en

---

[1] Como veremos más adelante, la coacusada Elsie Torres Sánchez fue convicta por el jurado que intervino en el proceso únicamente en el caso por el delito de conspiración.

síntesis y en lo pertinente, que actuando en concierto y de co-
mún acuerdo entre sí y con una tercera persona (²) "planifi-
caron y llevaron a cabo la muerte del ser humano Efraín Gra-
jales López", esposo de la apelante Gloria Cabán Torres.

El proceso contra las coacusadas se llevó a cabo ante el
Tribunal Superior de Puerto Rico, Sala de Aguadilla. La
prueba de cargo consistió primordialmente de la declaración
del testigo Raúl Ramos Arvelo. El testimonio de dicho testigo,
persona de escasa instrucción, en síntesis y en lo pertinente,
fue a los efectos de que como producto de una amistad que se
desarrolló entre él y la apelante, la cual desembocó en relacio-
nes amorosas, ésta le solicitó que consiguiera a "alguien" para
que matara a su esposo. Tal solicitud fue hecha con la promesa
de que realizado el hecho, la apelante se iría a vivir con el
testigo. Dicha conversación, según el testimonio de Ramos
Arvelo, ocurrió en presencia de la coacusada Torres Sánchez.
Por resultar esas gestiones infructuosas, Ramos Arvelo de-
cidió llevar a cabo el acto personalmente. Con ese propósito, la
apelante, estando presente su señora madre, le dio dinero a
Ramos Arvelo para que comprara un arma de fuego, proce-
diendo éste a así hacerlo. (³) Acordado el día de la semana en
que se realizaría el acto —un viernes— la apelante le solicitó
que comprara un "silenciador" para el revólver "para que no
se oyera". Acordaron, adicionalmente, que en dicho día y en la
hora indicada ella estaría en el balcón de su apartamento, le
haría una señal, saldría y le dejaría la puerta abierta. Por no
haber conseguido el silenciador, Ramos Arvelo decidió ir con
otra persona para que ésta prendiera el radio con el propósito
de que no se oyeran las detonaciones. El día indicado, luego de
la señal preacordada y que la apelante abandonara el aparta-

---

(²) El testigo de cargo —también acusado— Raúl Ramos Arvelo.

(³) La apelante, según el testimonio de Ramos Arvelo, tuvo que darle
dinero en dos ocasiones por cuanto en la primera ocasión él fue objeto de un
asalto.

mento, Ramos Arvelo entró al mismo en compañía del otro sujeto y ultimó de varios balazos al esposo de la apelante. El testimonio de Ramos Arvelo, por último, situó a la coacusada Torres Sánchez en una de las dependencias del apartamento al momento de ocasionarse la muerte al esposo de la apelante, no pudiendo precisar en qué momento el sujeto que le acompañaba desapareció del lugar de los hechos. La prueba de cargo adicionalmente demostró que agentes de la Policía de Puerto Rico —luego de ser "víctimas" de tres versiones distintas sobre lo ocurrido por parte de la entonces "testigo" Elsie Torres Sánchez, en la última de las cuales relacionó a Ramos Arvelo— arrestaron a dicha persona, procediendo éste entonces a declarar e involucrar a las dos coacusadas en la comisión de los hechos. Resulta pertinente señalar que a Ramos Arvelo no se le ofreció ni concedió inmunidad total por haber declarado; el Ministerio Fiscal, no obstante radicar cargos por asesinato en primer grado contra dicha persona, acordó rebajarle la calificación del delito de asesinato a uno de homicidio voluntario a cambio de su cooperación.

Terminado el desfile de la prueba por parte del Ministerio Público, la defensa sometió el caso sin presentar prueba testifical alguna. (⁴) Los señores del jurado que intervinieron en dicho proceso rindieron veredictos de culpabilidad contra la aquí apelante por los delitos de conspiración y asesinato en segundo grado, absolviéndola de las infracciones a la Ley de Armas. La coacusada Elsie Torres Sánchez fue absuelta en todos los cargos, excepto en cuanto al delito de conspiración.

Sentenciada que fuera Gloria Cabán Torres por el tribunal de instancia a cumplir penas, concurrentes entre sí, de dieciocho (18) y tres (3) años de reclusión por los delitos de asesinato en segundo grado y conspiración respectivamente, radicó en tiempo el correspondiente escrito de apelación ante este Tribunal. No obstante imputarle en el mismo al foro de ins-

---

(⁴) La prueba de la defensa se limitó a cierta prueba documental.

tancia la supuesta comisión de cuatro errores, (⁵) en el alega-
to que radicara discute uno solo de ellos, a saber:

> Erró el Honorable Tribunal de Instancia al declarar culpa-
> ble y convicta a la apelante en el presente caso a base de
> *prueba conflictiva* e *insuficiente en derecho* para establecer
> su culpabilidad más allá de duda razonable. (Énfasis suplido.)

## II

Una mera lectura de la exposición narrativa de la prueba,
certificada como correcta por el tribunal de instancia, es todo
lo que se necesita para concluir que la prueba presentada por
el Estado en el presente caso, *de merecer crédito la misma,* es
más que suficiente para sostener las convicciones decretadas
contra la apelante por los delitos de asesinato en segundo
grado y conspiración. Dicha prueba no sólo "versa" sobre
todos y cada uno de los elementos de los antes mencionados
delitos exigidos por nuestro ordenamiento penal sino que
tiende a establecer la responsabilidad de la apelante como
"autora intelectual" de los mismos por cuanto conspiró, in-
dujo, instigó y ayudó al "autor material" en la comisión de los
hechos. Véanse: Arts. 34, 35, 82, 83, 262 y 263 del Código Pe-
nal de 1974 (33 L.P.R.A. secs. 3171, 3172, 4001, 4002, 4523 y

---

(⁵)"PRIMER ERROR: Erró el Jurado al rendir un veredicto de culpa-
bilidad basándose en una prueba que no demostró fuera de toda duda razo-
nable la culpabilidad de la imputada de delito.

"SEGUNDO ERROR: Erró el Jurado al rendir un veredicto de culpa-
bilidad en el caso de Asesinato contra la imputada de delito Gloria Cabán
Torres cuando con la misma prueba absolvió a la co-acusada Elsie Torres
Sánchez del mismo delito de Asesinato.

"TERCER ERROR: Erró el Jurado al emitir un veredicto inconsis-
tente contra la imputada de delito, ya que la condenó por el Asesinato en
2do. Grado y la absolvió unánimemente en las Infracciones a los Artículos 8
y 6 de la Ley de Armas.

"CUARTO ERROR: Erró el Honorable Tribunal al admitir en evi-
dencia el testimonio del agente José Luis Ramos con relación a lo que le
comunicó la co-acusada Elsie Torres Sánchez en el lugar de los hechos, ya
que no se le habían hecho las advertencias legales según dispone la casuís-
tica puertorriqueña y federal con relación al derecho a no autoincriminarse."

4524); *Pueblo* v. *Dones Arroyo*, 106 D.P.R. 303 (1977). En palabras de Jiménez de Asúa:

> El sistema vigente en la mayor parte de los países reserva la pena íntegra asignada al delito *para los autores*, esto es, para aquellos que son causa eficiente, y dentro de los autores se comprende, tanto los autores materiales que han ejecutado realmente los actos constitutivos como los mal llamados *autores morales, que han concebido y resuelto el delito, pero sin ejecutarlo ellos mismos, sino haciéndolo ejecutar a otros.* (Énfasis suplido.) ([6])

Ahora bien, es principio fundamental de nuestro sistema de derecho que la culpabilidad de un imputado de delito *debe ser probada más allá de duda razonable. Pueblo* v. *Ortiz Morales*, 86 D.P.R. 456 (1962); *Pueblo* v. *Carrasquillo Carrasquillo*, 102 D.P.R. 545 (1974). El Ministerio Fiscal no cumple con ese requisito presentando prueba que meramente sea "suficiente", esto es, que "verse" sobre todos los elementos del delito imputado; *se le requiere que la misma sea "suficiente en derecho"*. Ello significa que la evidencia presentada, "además de suficiente, *tiene que ser satisfactoria,* es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación" o en un ánimo no prevenido. (Énfasis suplido.) *Pueblo* v. *Carrasquillo Carrasquillo,* ante, pág. 552. Esa "insatisfacción" con la prueba es lo que se conoce como "duda razonable y fundada". *Pueblo* v. *Toro Rosas*, 89 D.P.R. 169 (1963).

Precisamente a ese punto es que va dirigido el antes transcrito señalamiento de error. Se nos indica que el testimonio del testigo Ramos Arvelo —único que involucra a la apelante con los hechos en controversia— es uno plagado de inconsistencias y contradicciones lo que causa que el mismo no merezca credibilidad. Dicho de otra forma, se argumenta que por razón de

---

([6]) L. Jiménez de Asúa, *La Ley y el Delito*, 5ta ed., Buenos Aires, Ed. Sudamericana, 1967, pág. 497.

lo antes señalado, la prueba presentada por el Ministerio Fiscal no es satisfactoria ni suficiente en derecho por cuanto no produce "certeza o convicción moral en una conciencia exenta de preocupación". *Pueblo* v. *Carrasquillo Carrasquillo*, ante, pág. 552.

El señalamiento no es nuevo. No por ello deja de plantear una de las situaciones más delicadas, difíciles y angustiosas con las que se confrontan los componentes de un tribunal apelativo en su diaria labor. Acceder a lo solicitado por la apelante en el presente caso representa, en palabras sencillas, sustituir nuestro criterio a nivel apelativo por el del juzgador de los hechos. En otras palabras, implica resolver que la prueba que los señores del jurado que intervinieron en el caso entendieron y determinaron que era "satisfactoria" y "suficiente en derecho" en realidad no lo es.

## III

■ Como es sabido, la apreciación que hace un juzgador de la evidencia desfilada durante un proceso judicial criminal es una cuestión mixta de hecho y de derecho. Es así por cuanto el análisis que de la prueba presentada se realiza "pone en movimiento, además de la experiencia del juzgador, su conocimiento del Derecho para así llegar a una solución justa de la controversia". *Pueblo* v. *Carrasquillo Carrasquillo*, ante, pág. 552.

■ Es por ello que la determinación que ha hecho el juzgador de los hechos a nivel de instancia a los efectos de que la culpabilidad del imputado de delito ha quedado establecida más allá de duda razonable es una que es revisable en apelación como "cuestión de derecho". *Pueblo* v. *Serrano Nieves*, 93 D.P.R. 56 (1966); *Pueblo* v. *Pagán Díaz*, 111 D.P.R. 608 (1981).

■ Es norma jurisprudencial trillada que esa "determinación de culpabilidad" que hace el juzgador de los hechos

a nivel de instancia es merecedora de gran deferencia por parte del tribunal apelativo. El fundamento o base en que se apoya la referida norma es obvio: dicho juzgador es el que, de ordinario, está en mejor posición para aquilatar la prueba testifical ya que fue el que oyó y vio declarar a los testigos. [7] Como expresáramos en *Ortiz* v. *Cruz Pabón*, 103 D.P.R. 939, 947 (1975):

> . . . y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, *todos estos elementos se pierden en la letra muda de las actas,* por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; *le faltará el instrumento más útil para la investigación de la verdad: la observación* . . . . (Énfasis suplido.)

Es por ello que este Tribunal ha expresado en reiteradas ocasiones que, de ordinario, no intervendremos con el veredicto condenatorio emitido por un jurado o el fallo inculpatorio de un magistrado en "ausencia de pasión, prejuicio o error manifiesto" en la apreciación que de la prueba realizaron los mismos. *Pueblo* v. *Millán Meléndez*, 110 D.P.R. 171 (1980); *Pueblo* v. *López Pérez*, 106 D.P.R. 584 (1977); *Pueblo* v. *Borrero Robles*, 113 D.P.R. 387 (1982). Debe quedar claro, en adición, que la responsabilidad de demostrar que procede la intervención con el fallo o veredicto condenatorio emitido a nivel de instancia recae, de manera principal, sobre el apelante.

---

[7] En cuanto a prueba documental, el tribunal apelativo está en la misma posición que el foro de instancia. *Pueblo* v. *Pagán Díaz*, 111 D.P.R. 608 (1981).

■ Todo lo anteriormente expresado, sin embargo, no significa que esa determinación de culpabilidad realizada por el juzgador de los hechos constituye una barrera insalvable. En el pasado, en ocasiones en que un análisis ponderado de la prueba desfilada ante el foro de instancia nos ha producido duda razonable y fundada sobre si la culpabilidad del apelante ha quedado establecida más allá de duda razonable, no hemos vacilado en dejar sin efecto un fallo condenatorio. *Pueblo* v. *Carrasquillo Carrasquillo*, ante; *Pueblo* v. *Pagán Díaz*, ante; *Pueblo* v. *Meléndez Rolón*, 100 D.P.R. 734 (1972); *Pueblo* v. *Falú Fuentes*, 102 D.P.R. 809 (1974); *Pueblo* v. *Sanabria Pérez*, 113 D.P.R. 694 (1983); *Pueblo* v. *Álamo Álamo*, 116 D.P.R. 673 (1985). Y es que, como expresáramos en *Pueblo* v. *Carrasquillo Carrasquillo*, ante, págs. 551–552, hasta tanto "se disponga de un método infalible para averiguar sin lugar a dudas dónde está la verdad, su determinación tendrá que ser una cuestión de conciencia. Ese deber de conciencia no para en el fallo del tribunal sentenciador. *Nosotros también tenemos derecho a tenerla tranquila*". (Énfasis suplido.)

## IV

Como expresáramos anteriormente, la apelante en el alegato que radicara se dedica casi exclusivamente a atacar la declaración vertida durante el proceso celebrado por el testigo Raúl Ramos Arvelo, único testimonio que la relaciona con el asesinato que él perpetrara. Nos señala y argumenta, en forma vehemente, que dicha declaración debe ser descartada por ser indigna de crédito. Hemos examinado minuciosamente la exposición narrativa de la prueba y los autos originales del presente caso. Encontramos que hay varios factores o circunstancias que militan en contra de la solicitud de la apelante de que intervengamos con la adjudicación de credibilidad que hicieron los señores del jurado respecto al mencionado testimonio.

Es un hecho indiscutible —aceptado, inclusive, por la apelante— que el tribunal de instancia le impartió a los señores del jurado todas las instrucciones respecto a este punto requeridas por la ley y la jurisprudencia aplicable. Específicamente les instruyó —en obediencia del mandato contenido en la Regla 156 de las de Procedimiento Criminal— que el testimonio de Ramos Arvelo, por ser el de un coautor, debería ser "examinado con desconfianza" y que le deberían dar el "peso" que estimaran procedente "luego de examinarlo con cautela a la luz de toda la evidencia presentada en el caso". No hay duda que los señores del jurado deben haber tomado en consideración, entre otros factores, que el Estado no le concedió inmunidad total a Ramos Arvelo a cambio de su declaración y cooperación, hecho que en esta clase de situaciones tiene singular importancia y peso. Tenemos, en adición, que en el presente caso —por estipulación de las partes— el jurado tuvo el beneficio de escuchar la declaración que este testigo prestara en su totalidad a nivel de vista preliminar; en otras palabras, tuvieron la oportunidad de decidir si su testimonio a lo largo de todo el procedimiento había sido o no consistentemente el mismo.

Por último, un examen minucioso del referido testimonio revela que a pesar de que dicho testigo efectivamente incurrió en una serie de contradicciones e inconsistencias, las mismas no versan sobre los puntos verdaderamente críticos de su testimonio; más bien, se refieren a detalles y hechos sobre los cuales la mente humana puede olvidar y confundir. Después de todo, debemos recordar que no existe el testimonio "perfecto", el cual de ordinario, en lugar de ser indicativo de veracidad, es altamente sospechoso por cuanto, por lo general, es producto de la fabricación. Aun aceptando, a los fines de la argumentación, que las contradicciones fueran de índole sustancial, debe mantenerse presente que "cuando un testigo se contradice, lo que se pone en juego es su credibilidad" y que es "al jurado o al juez de instancia a quien le corresponde resol-

ver el valor de su restante testimonio". *Pueblo* v. *Cruz Negrón,* 104 D.P.R. 881, 883 (1976)'.

En resumen, un examen sereno, detallado y desapasionado de la declaración del testigo Ramos Arvelo no produce en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que amerite que intervengamos con la credibilidad que le mereciera el testimonio del referido testigo al juzgador de los hechos a nivel de instancia.

## V

La apelante no discute en el alegato los "errores" segundo, tercero y cuarto que señalara en el escrito de apelación que originalmente radicara. No obstante ello pasamos a considerarlos. ( [8] )

▇ Mediante el segundo y tercer señalamiento se atacan los veredictos rendidos por los señores del jurado en el presente caso por ser los mismos "inconsistentes". Presumimos que dichos señalamientos se refieren al hecho de que a pesar de que los señores del jurado declararon culpable a la apelante de los delitos de asesinato en segundo grado y conspiración, procedieron a absolverla de las infracciones a la Ley de Armas de Puerto Rico. Dicho señalamiento de error es obviamente inmeritorio. Hemos sostenido en innumerables ocasiones en el pasado que de ordinario no constituye error que dé lugar a la revocación de una convicción el mero hecho de que el jurado que intervenga en un proceso criminal en particular emita, respecto a diferentes pliegos acusatorios, veredictos que no guardan la más absoluta consistencia lógica entre sí. *Pueblo* v. *Medina Ocasio,* 98 D.P.R. 302 (1970) ; *Pueblo* v. *Cortés,* 99 D.P.R. 679 (1971) ; *Pueblo* v. *Figueroa Castro,* 102 D.P.R. 279

---

( [8] ) Discutimos los mismos no obstante la norma a los efectos de que un señalamiento de error, que no sea fundamental, que se expone pero que no se discute, no tiene que ser objeto de discusión por el tribunal apelativo. *Pueblo* v. *Matos Pretto,* 93 D.P.R. 113 (1966)'.

(1974); *Pueblo* v. *Cruz Negrón*, 104 D.P.R. 881 (1976), y *Pueblo* v. *Millán Meléndez*, 110 D.P.R. 171 (1980).

No hay duda que en el presente caso la prueba presentada por el Ministerio Fiscal era inclusive suficiente en derecho para sostener una convicción en cuanto a la apelante por infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, por cuanto se probó más allá de duda razonable que ésta, como coautora de los hechos, tenía la "posesión constructiva" del arma de fuego utilizada por Ramos Arvelo. (⁹) El hecho de que los señores del jurado, no obstante lo anteriormente expresado, emitieran un veredicto absolutorio en los casos de la Ley de Armas, repetimos, no conlleva la revocación de las convicciones por los delitos de asesinato en segundo grado y conspiración. *Pueblo* v. *Millán Meléndez*, ante.

Por último, mediante el cuarto señalamiento de error, se ataca la admisión en evidencia de las declaraciones hechas por la coacusada Elsie Torres Sánchez a agentes de la Policía de Puerto Rico inmediatamente después de ocurridos los hechos por razón de que no "se le habían hecho las advertencias legales" requeridas. Basta señalar que en esos momentos dicha coacusada no era "sospechosa", *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965); era una mera "testigo" a la cual no había que hacerle advertencia alguna.

*Se dictará la correspondiente sentencia confirmatoria.*

El Juez Asociado Señor Negrón García se inhibió.

---

(⁹)La ley, naturalmente, contempla no sólo la tenencia física inmediata de un objeto por parte de una persona sino que la posesión común que ocurre cuando más de una persona, con conocimiento, comparten el control del objeto delictivo; esto es, la llamada "posesión constructiva". *Pueblo* v. *Ortiz Martínez*, 116 D.P.R. 139 (1985); *Pueblo* v. *Rivera Tirado*, 117 D.P.R. 419 (1986).