# 2000 DTA 99

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ**

EL PUEBLO DE PUERTO RICO
Apelado

v.

ISIDRO SANTIAGO SOTO
Convicto-Apelante

Núm. KLAN-97-00643

San Juan, Puerto Rico, a 28 de enero de 2000

Panel integrado por su Presidente, el Juez Rossy García
y los Jueces Martínez Torres y Rodríguez García

Rodríguez García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Por medio del presente recurso, el convicto apelante Isidro Santiago Soto *("Santiago")* nos solicita la revocación de tres (3) sentencias emitidas en su contra por el Tribunal de Primera Instancia, Sala Superior de Mayaguez, el día 6 de junio de 1997. A través de dichas sentencias, a Santiago se le encontró culpable por infracción a los Artículos 401 y 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. 2401 y 2404, respectivamente, y por violación al Art. 258 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4493.

Inconforme con tales determinaciones judiciales, Santiago acude ante nos. Examinado el recurso en sus méritos, confirmamos dos de las sentencias apeladas y revocamos uno de los referidos dictámenes.

## I. Trasfondo Fáctico

El día 11 de enero de 1997, contra el convicto-apelante Isidro Santiago Soto se presentaron un total de tres (3) denuncias por delitos alegadamente cometidos en esa misma fecha. Por conducto de dos de ellas, a Santiago se le imputó la posesión con intención de distribuir y, en cargo separado, la posesión simple, de la sustancia controlada conocida como cocaína, Arts. 401 y 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2401 y 2404. (Autos Originales, caso ISC97GO124, pág. 3; caso ISC97GO125, pág. 3). Además, a través de la denuncia restante, a Santiago se le imputó el haber utilizado violencia e intimidación contra un agente del orden público con el propósito de evitar su arresto, Art. 256 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4491. (Autos originales, caso IAP97GO009, pág. 5).

Más adelante, el día 3 de marzo de 1997, se llevó a cabo una vista preliminar para determinar si era procedente la presentación de acusaciones contra Santiago con motivo de los delitos imputados. (Autos Originales, caso ISC97GO125, pág. 6; caso IAP97GO009, pág. 11). Como resultado de la referida vista, el Juez de Distrito, Hon. Héctor Jaime Conty Pérez, determinó que existía causa probable para acusar a Santiago en cuanto a las alegadas infracciones a los Arts. 401 y 404 de la Ley de Sustancias Controladas. No obstante, el referido magistrado no encontró causa probable para acusar a Santiago por resistir su arresto mediante el empleo de intimidación y violencia, Art. 256 del Código Penal, *supra*, lo cual constituye un delito de naturaleza grave. En su lugar, se determinó causa probable para acusar al entonces imputado Santiago por el delito menos grave de

resistir voluntariamente la acción de un funcionario del orden público en el cumplimiento de sus obligaciones, específicamente por resistirse a ser arrestado por agentes de la Policía de Puerto Rico, sin que el uso de intimidación o violencia sean elementos del delito, Art. 258 del Código Penal, *supra*.

En 13 de marzo de 1997, se llevó a cabo el acto de la lectura de las acusaciones presentadas contra Santiago. En dicho acto, el Ministerio Público alegó la existencia de reincidencia habitual, haciendo referencia a varios delitos graves anteriormente cometidos por el apelante. En esa ocasión, la representación legal de Santiago solicitó un término de diez (10) días para efectuar alegación con respecto a los delitos imputados. (Autos Originales, caso ISC97GO124, pág. 7; caso ISC97GO125, pág. 21; caso IAP97GO009, pág. 12). Posteriormente, el día 2 de junio de 1997, Santiago hizo alegación de no culpable en todos y cada uno de los delitos a él atribuidos. Ese mismo día se procedió a tomar juramento a los candidatos a jurados y se comenzó el proceso de desinsaculación de dicho cuerpo deliberativo. (Autos Originales, caso ISC97GO124, pág. 11; caso ISC97GO125, pág. 29; caso IAP97GO009, pág. 15).

Luego de varios incidentes procesales y de la celebración del acto del juicio, el día 6 de junio de 1997, el jurado rindió un veredicto de culpabilidad contra Santiago por infracciones a los Arts. 401 y 404 de la Ley de Sustancias controladas, *supra,* mientras que el Tribunal lo encontró culpable por el delito menos grave de ofrecer resistencia a agentes de la Policía al momento de ser arrestado, Art. 258 del Código Penal, *supra*. (Autos Originales, caso ISC97GO124, pág. 26; caso ISC97GO125, pág. 52; caso IAP97GO009, pág. 26). Ese mismo día, a solicitud de la defensa, el Tribunal de Primera Instancia, Hon. Fernando L. Torres Ramírez, J., dictó sentencia en cada uno de los casos ventilados en su sala y condenó a Santiago de la manera siguiente: a) por infracción al Art. 401 de la Ley de Sustancias Controladas (posesión de cocaína con intención de distribuirla), tomando en cuenta la alegación del Ministerio Público de reincidencia habitual, impuso a Santiago la pena de Separación Permanente de la Sociedad; b) por el delito de posesión ilegal de cocaína, Art. 404 del referido estatuto, el tribunal le impuso al aquí apelante veinte (20) años naturales de cárcel, a ser cumplidos de manera concurrente con la pena anteriormente reseñada; y c) la pena de seis (6) meses de cárcel, también de forma concurrente, por resistirse a ser arrestado por agentes del orden público, Art. 258 del Código Penal, *supra*.

Inconforme con las sentencias dictadas en su contra, el convicto Santiago presentó ante este Tribunal un recurso de apelación por derecho propio. Oportunamente, ordenamos a la Sociedad para Asistencia Legal que evaluara el caso de Santiago y, de ser procedente, que asumiera la representación del convicto apelante ante este foro judicial. En efecto, dicha entidad se hizo cargo de la representación legal de Santiago en etapa apelativa.

Con el beneficio de los autos originales correspondientes a cada caso, la transcripción de la prueba oral y los alegatos de Santiago y del Procurador General, resolvemos.

## II. Derecho Aplicable

Es norma establecida en nuestra jurisdicción que un tribunal apelativo no intervendrá con la apreciación que de la prueba haya hecho un tribunal de primera instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Mercado Rivera, et.al. v. Universidad Católica de Puerto Rico,* ___ D.P.R. ___ (1997), **97 J.T.S. 106;** *Pueblo v. Meliá León,* ___ D.P.R. ___ (1997), **97 J.T.S. 110;** *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8 (1987); *Quintana Tirado v. Longoria,* 112 D.P.R. 276 (1982). Debe recordarse, sin embargo, que aunque el arbitrio del juzgador de hechos es respetable, no es absoluto, y que una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. *Méndez de Rodríguez v. González Molina,* ___ D.P.R. ___ (1996), **96 J.T.S. 149;** *Cárdenas Maxán v. Rodríguez Rodríguez,* 125 D.P.R. 702 (1990); *Vélez v. Secretario de Justicia,* 115 D.P.R. 533 (1984); *Rivera Pérez v. Cruz Corchado, supra; Vda. de Morales v. De Jesús Toro,* 107 D.P.R. 826 (1978). Aunque haya evidencia que sostenga las conclusiones de hecho de un tribunal, si de un análisis de la totalidad de la evidencia el foro apelativo queda convencido de que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideramos claramente erróneas. *Méndez de Rodríguez v. González Molina, supra*. Véase además: *Cárdenas Maxán v. Rodríguez Rodríguez, supra; Abudo Servera v. A.T.P.R.,* 105

D.P.R. 728 (1977); *Sanabria v. Sucn. González,* 82 D.P.R. 885 (1961).

El Art. II, sec. 11 de la Constitución de Puerto Rico establece una presunción de inocencia a favor de todo acusado, exigiéndose, para derrotar la misma, que toda convicción siempre esté sostenida por prueba que establezca la culpabilidad del acusado más allá de duda razonable. *Pueblo v. González Román,* ___ D.P.R. ___ (1995), **95 J.T.S. 86;** *Pueblo v. Pagán Santiago,* 130 D.P.R. 470 (1992), **92 J.T.S. 56;** *Pueblo v. Rosaly Soto,* 128 D.P.R. 729 (1991). Sin embargo, no se exige que se destruya toda duda posible, especulativa o imaginaria a los fines de establecer la culpabilidad del acusado. Es suficiente que el fallo del tribunal esté sostenido por prueba suficiente y satisfactoria que establezca certeza y convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Cabán Torres,* 117 D.P.R. 645 (1986); *Pueblo v. Bigio Pastrana,* 116 D.P.R. 748 (1985). La duda razonable es aquella insatisfacción o intranquilidad en la conciencia del juzgador de los hechos sobre la culpabilidad del acusado, una vez desfilada la totalidad de la prueba presentada por el Ministerio Fiscal. *Pueblo v. Toro Rosas,* 89 D.P.R. 169 (1963). Sobre el criterio de duda razonable para determinar culpabilidad, en el caso de *Pueblo v. De León Martínez,* 132 D.P.R. 746 (1993), se expresó:

*"Es principio fundamental de nuestro sistema de derecho que la culpabilidad de un imputado de delito debe ser probada más allá de duda razonable. Pueblo v. Ortiz Morales, 86 D.P.R. 456 (1962); Pueblo v. Carrasquillo, 102 D.P.R. 545 (1974); Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986). Esta máxima es consustancial con el principio de presunción de inocencia y es un elemento del debido proceso de ley. Pueblo v. Cruz Granados, 116 D.P.R. 3 (1984). Para cumplir con este requisito se requiere que la prueba presentada sea "suficiente en derecho", lo que significa que la evidencia presentada tiene que producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Pueblo v. Carrasquillo, supra; Pueblo v. Rodríguez Román, 128 D.P.R. ___, 91 J.T.S. 26. La insatisfacción con la prueba es lo que se conoce como duda razonable y fundada. Pueblo v. Toro Rosas, 89 D.P.R. 169 (1963); Pueblo v. Cabán Torres, supra. La determinación de que se ha probado la culpabilidad más allá de duda razonable, es revisable en apelación como cuestión de derecho. Pueblo v. Serrano Nieves, 93 D.P.R. 56 (1966); Pueblo v. Pagán Díaz, 111 D.P.R. 608 (1981). Cuando un análisis ponderado de la prueba desfilada ante el foro de instancia nos produce duda razonable y fundada sobre si la culpabilidad del apelante ha quedado establecida más allá de duda razonable, este Tribunal no ha vacilado en dejar sin efecto un fallo condenatorio. Pueblo v. Cabán Torres, supra, pág. 657; Pueblo v. Rivero Lugo y Almodóvar, 121 D.P.R. [454] (1988).*

*Aunque la determinación de culpabilidad de un acusado es una cuestión mixta de hecho y de derecho, Pueblo v. Echevarría I, 128 D.P.R. 299 (1991); Pueblo v. Cabán, supra, el foro apelativo concede gran deferencia a la determinación que hace el juzgador de hechos a nivel de primera instancia y de ordinario no interviene con la misma en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Pueblo v. Somarriba, 131 D.P.R. 462 (1992); Pueblo v. Maisonave, 129 D.P.R. 49 (1991); Pueblo v. Echevarría I, supra. La razón de ser de esta norma es obvia, pues es el juzgador de los hechos quien tiene la oportunidad de observar el comportamiento de los testigos en la silla testifical, lo cual constituye un aspecto de vital importancia al momento de adjudicar credibilidad. Pueblo v. Dávila Delgado, ___ D.P.R. ___ (1997), 97 J.T.S. 68; Vélez Reboyras v. Secretario de Justicia, 115 D.P.R. 529 (1984); Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975); Rodríguez v. Concreto Mixto, Inc., 98 D.P.R. 579 (1970). Por otro lado, es norma trillada en nuestra jurisdicción que la evidencia directa de un testigo que merezca entero crédito al juzgador, es prueba suficiente para establecer la realidad de cualquier hecho. Regla 10 de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10; El Pueblo de Puerto Rico v. Chévere Heredia, ___ D.P.R. ___ (1995), 95 J.T.S. 115; Pérez v. Acevedo Quiñones, 100 D.P.R. 894 (1972)."*

En primer lugar, luego de un análisis detenido de la transcripción de la prueba oral vertida durante el acto del juicio, no encontramos razón alguna que nos mueva a intervenir con la apreciación de la prueba llevada a cabo por el tribunal sentenciador. Así mismo, tampoco nos vemos precisados a modificar la determinación de culpabilidad efectuada por el foro de primera instancia en cuanto a los delitos de posesión de sustancias controladas con la intención de distribuir las mismas (Art. 401 de la Ley de Sustancias Controladas, *supra*), ni por resistir el arresto de que finalmente fue objeto (Art. 258 del Código Penal). Con respecto a los delitos antes mencionados, somos del criterio de que la prueba desfilada por el Ministerio Público ante el Tribunal de Primera

Instancia fue suficiente en derecho para derrotar la presunción de inocencia que cobijaba a Santiago y para evidenciar la culpabilidad de éste más allá de duda razonable. La prueba presentada por la fiscalía logró establecer de forma contundente cada uno de los elementos de los delitos imputados a Santiago. Del testimonio vertido por el agente encubierto Edgardo Ríos Valentín, se desprende la posesión ilegal por Santiago, con intención de distribuirla, de la sustancia controlada conocida como cocaína. Dicho agente encubierto declaró en parte que, luego de llegar al lugar de los hechos, preguntó a Santiago si tenía *"perico" ("cocaína")* y que el apelante le manifestó que tenía bolsitas de diez dólares ($10.00); que le solicitó a Santiago dos bolsitas y éste sacó una caja color oro de uno de los bolsillos de su pantalón, de la cual extrajo un sobre cuyo contenido constaba de supuesta cocaína; que Santiago le dijo que pidiera la bolsita restante a otro individuo que estaba en el lugar apodado *"Che"*, el cual más tarde resultó ser el también arrestado Moisés Ramírez Francesquini, quien le hizo entrega de la misma; y que luego él (el agente encubierto Ríos Valentín) entregó a Santiago un billete de veinte dólares ($20.00) como parte de la transacción.

Por otro lado, el testimonio del agente Jaime Concepción Crespo también estableció la posesión ilegal de cocaína por Santiago, corroboró la intención del apelante de distribuir el referido narcótico y evidenció la resistencia de Santiago al arresto de que fuera objeto. El agente Jaime Concepción Crespo declaró parcialmente que, luego de que el Agente encubierto Ríos Valentín identificara a Santiago y a *"Che"* como las personas a quienes había comprado cocaína, se bajó del vehículo en que se encontraba junto al supervisor de la operación, el agente Milton Acosta; que luego de identificarse, procedió al arresto de Moisés *"Che"* Ramírez Francesquini y que Santiago comenzó a caminar; y que, al intentar el arresto de Santiago, éste comenzó un forcejeo con brazos y piernas y que no se dejaba agarrar por los brazos, por lo que el agente Milton Acosta tuvo que ayudarlo a consumar dicho arresto. El agente Jaime Concepción Crespo declaró, además, que luego del arresto y de leerle las correspondientes advertencias legales, efectuó un registro a Santiago y le ocupó una caja dorada que contenía seis (6) bolsitas de cocaína, tres (3) azules con cierre a presión y tres (3) transparentes con franjas negras, además de la suma de treinta y ocho dólares ($38.00) que se dividían en un billete de $20.00, uno de $10.00, uno de $5.00 y tres de $1.00. Por su parte, los agentes José Luis Chaparro y Luis R. Molina declararon haber efectuado las pruebas de campo de rigor a las sustancias ocupadas por los agentes Ríos Valentín y Jaime Concepción Crespo, respectivamente, y que las mismas arrojaron un resultado positivo a cocaína en ambos casos. Dichos resultados fueron posteriormente corroborados por pruebas químicas realizadas por personal del Instituto de Ciencias Forenses.

La prueba desfilada por el Ministerio Público ante el Tribunal de Primera Instancia, evidencia de todos y cada uno de los elementos de los delitos por los que se acusó a Santiago. La misma no presenta características increíbles ni fisuras que nos lleven a concluir que se haya cometido un error manifiesto en la apreciación de la prueba, ni mucho menos, que dicho foro haya actuado movido por pasión, prejuicio o parcialidad. Bajo las circunstancias arriba descritas, no es procedente nuestra intervención con respecto a la apreciación de la prueba y a la determinación de culpabilidad efectuada por el tribunal sentenciador.

En segundo lugar, bajo las circunstancias que rodean al presente caso, la pena de separación permanente de la sociedad impuesta a Santiago, bajo nuestro estatuto de reincidencia, no resulta violatoria del principio de proporcionalidad contenido en la Cláusula Constitucional contra castigos crueles e inusitados, Art. II Sec. 12 de la Constitución del Estado Libre Asociado de Puerto Rico. Cabe señalar que es norma establecida en nuestra jurisdicción que la Asamblea Legislativa tiene la facultad de imponer a los delincuentes habituales una penalidad mayor dentro de la autoridad que constitucionalmente le asiste para imponer castigos, sin que ello viole la cláusula contra los castigos crueles e inusitados contenida en el Art. II, Sec. 12 de nuestra Constitución. *Pueblo v. Reyes Morán,* 123 D.P.R. 786 (1989). El Tribunal Supremo de los Estados Unidos ha mantenido un alto grado de deferencia sobre la facultad de las legislaturas estatales para definir las acciones que serán consideradas como delito y para prescribir las penalidades correspondientes a dichas acciones. *McMillan v. Pennsylvania,* 477 U. S. 79 (1986); *Solem v. Helm,* 463 U. S. 277 (1983) y *Rummel v. Estelle,* 445 U.S. 263 (1980), según citados con aprobación en *Pueblo v. Reyes Morán, supra.* Los criterios para definir a un delincuente habitual y la penalidad que le habrá de ser impuesta son asuntos que competen a las jurisdicciones

estatales. *Pueblo v. Reyes Morán, supra*; *Rummel v. Estelle, supra,* pág. 285. Por otro lado, el acto de imposición de la pena es uno que está supeditado a la sana discreción del tribunal sentenciador. Un tribunal apelativo no intervendrá con dicha determinación a menos que se demuestre que el foro de instancia a incurrido en un claro abuso de discreción. *Pueblo v. Ruiz Bosch,* 127 D.P.R. 762 (1991).

Santiago argumenta que, en su caso, la pena de separación permanente de la sociedad infringe la prohibición constitucional contra castigos crueles e inusitados, toda vez que, según alegado, dicha penalidad le fue aplicada por el mero hecho de ser un usuario adicto a las drogas. El apelante también alegó que los delitos anteriores en los que se basó la alegación de reincidencia habitual esgrimida por el Ministerio Público fueron por posesión simple de drogas para uso personal con motivo de su alegada adicción y que tal curso de acción viola la dignidad del ser humano; que los delitos anteriormente cometidos por él no envuelven violencia ni fueron dirigidos contra persona alguna, y que la cantidad de cocaína que le fue ocupada demuestra que la misma era para uso personal. En atención a tales argumentos, Santiago arguye que los delitos por él cometidos no justifican el que se le haya declarado delincuente habitual y se le haya separado permanentemente de la sociedad.

No obstante lo anterior, a poco que examinemos la validez de los argumentos esbozados por Santiago en favor de su posición, resulta forzosa la conclusión de que los mismos resultan frívolos por el hecho de partir de premisas equivocadas. Del examen de los autos originales relativos al caso, se desprende que la alegación de reincidencia habitual presentada contra Santiago estuvo predicada en la convicción anterior del acusado por varios delitos de naturaleza grave, específicamente los siguientes:

*"a) 6 de octubre de 1988 - Al acusado Isidro Santiago se le encontró culpable de cometer los delitos de tentativa de robo (sentencia de 4 años de prisión), agresión agravada en su modalidad grave (2 años de prisión, concurrentes) y por infracción a la Ley de Armas (1 año de reclusión concurrente).*

*b) 25 de agosto de 1993 -- Santiago es convicto por dos cargos separados de posesión de sustancias controladas con intención de distribuirlas. En esa ocasión, al apelante se le condenó a cumplir 3 años de cárcel por cada cargo, de manera concurrente.*

*c) 6 de abril de de 1995 - El apelante Santiago fue convicto por dos cargos de posesión de sustancias controladas. Por cada cargo, al acusado se le condenó a cumplir 5 años de prision concurrentes."*

Como vemos, no es correcto afirmar, como lo hace Santiago en su alegato, que la determinación de reincidencia habitual efectuada en su contra y la correspondiente pena de separación permanente de la sociedad le haya sido impuesta meramente por ser un adicto a las drogas. El expediente delictivo de Santiago demuestra de manera diáfana que éste ha incurrido anteriormente en delitos graves contra la persona, los cuales envuelven el empleo de la violencia (intento de robo, agresión agravada grave) y otros delitos sumamente nocivos a la sociedad en general (posesión y distribución de sustancias controladas). Por otra parte, si bien es cierto que a Santiago se le ocuparon en total siete sobresitos de cocaína, cantidad relativamente pequeña, dicha situación por sí sola no significa que Santiago poseyera la misma para su uso personal, sin intención de distribuirla. Dicha situación no puede desligarse del cuadro fáctico que le acompaña y que en este caso indica todo lo contrario. Lo cierto es que ante el tribunal sentenciador se probó más allá de duda razonable que a Santiago se le ocupó cocaína con motivo de la venta que de dicha sustancia realizara al agente encubierto Edgardo Ríos Valentín y no meramente por poseer y utilizar la misma para su uso personal.

Por otro lado, como parte de su alegato, Santiago argumenta que, a raíz de la enmienda operada en nuestro estatuto de reincidencia por motivo de la Ley Núm. 32 del 27 de julio de 1993, la pena de separación permanente de la sociedad establecida con respecto a reincidentes habituales, resulta violatoria del principio de proporcionalidad que permea la cláusula contra castigos crueles e inusitados de la Constitución de Puerto Rico. Específicamente, la referida ley enmendatoria eliminó el derecho de un acusado declarado delincuente habitual

de ser considerado para el beneficio de libertad bajo palabra, luego de cumplir treinta (30) años naturales de reclusión. La intención del Legislador, al aprobar la referida enmienda, quedó plasmada en el siguiente fragmento de la Exposición de Motivos del estatuto:

*"En los últimos años, el auge de la criminalidad ha demostrado la marcada tendencia de las personas que delinquen de incurrir repetidamente en conducta delictiva. A pesar de que nuestro estatuto de reincidencia sanciona con mayor severidad a estos delincuentes, la realidad que vive nuestro País demuestra que estas personas [,] cuando disfrutan del beneficio de libertad bajo palabra [,] vuelven a cometer actos delictivos. Ello constituye un serio problema de seguridad pública.*

*Esta medida excluye del beneficio de libertad bajo palabra la reincidencia agravada por la comisión de ciertos delitos violentos y la reincidencia habitual con el propósito de separar de la sociedad a aquellas personas cuya tendencia criminal no ha cedido, a pesar de las sanciones y del esfuerzo del Estado por rehabilitarlo."*

Luego de la citada enmienda, en lo pertinente al caso de autos, el Art. 61 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3301, el cual es parte de nuestro estatuto de reincidencia, quedó redactado en los siguientes términos:

*"a) Se establecen los siguientes grados de reincidencia en las circunstancias que se indican a continuación.*

*(1)...*

*(2)...*

*(3) Habrá reincidencia habitual cuando el que ha sido convicto y sentenciado por dos o más delitos graves cometidos en tiempos diversos e independientes unos de otros, cometiere posteriormente cualquiera de los siguientes delitos o sus tentativas: asesinato, robo, incesto, extorsión, violación, sodomía, actos lascivos o impúdicos cuando la víctima fuere menor de catorce (14) años, secuestro, agresión agravada en su modalidad grave, escalamiento agravado, apropiación ilegal agravada de vehículos de motor o sus partes, incendio agravado, sabotaje de servicios públicos esenciales, fuga cuando la persona está cumpliendo sentencia firme o en trámite de apelación por un delito grave, cualquier delito grave en violación a las secs. 561 a 593 del Título 25 y a la Ley Contra el Crimen Organizado, secs. 971 et seq. del Título 25, violación a las secs. 2401, 2405 y 2411a del Título 24, parte de la Ley de Sustancias Controladas de Puerto Rico, o a las secs. 415 a 418a del Título 25, parte de la Ley de Armas de Puerto Rico, así como también cualquier conspiración por la comisión de estos delitos y sus tentativas."*

Por su parte, en torno al efecto de una determinación de reincidencia habitual, a raíz de la enmienda del año 1993, el inciso (c) del Art. 62 de nuestro Código Penal, 33 L.P.R.A. sec. 3302 (c), se expresa de la manera siguiente:

*"(c) Efectos de la reincidencia habitual. - En caso de reincidencia habitual, el convicto será declarado por el tribunal delincuente habitual y será sentenciado a separación permanente de la sociedad mediante reclusión perpetua."*

*..."*.

En favor de su argumento con respecto a la alegada inconstitucionalidad de nuestra ley de reincidencia, Santiago cita los casos de *Rummel v. Estelle,* 445 U.S. 263 (1980), y *Solem v. Helm,* 463 U.S. 277 (1983). Para efectos comparativos, conviene aquí hacer un breve resumen de los detalles envueltos en dichos casos. En *Rummel, supra,* el acusado fue convicto en 1964 por el delito grave de uso fraudulento de una tarjeta de crédito

y, nuevamente en 1969, por el delito grave de haber negociado con un cheque falsificado. En 1973, Rummel fue acusado y convicto por cometer un tercer delito de naturaleza grave: hurto mediante falsa representación. En esa ocasión, el Ministerio Público invocó el estatuto de reincidencia del estado de Texas y, como consecuencia, Rummel fue condenado a reclusión carcelaria por vida. Eventualmente, el caso fue llevado ante la consideración del Tribunal Supremo federal bajo la alegación de que la pena impuesta al acusado era contraria al principio de proporcionalidad imbuido en la cláusula contra castigos crueles e inusitados de la Constitución de los Estados Unidos. Bajo las circunstancias del caso, el mencionado foro judicial determinó que aunque los delitos cometidos por Rummel no eran muy severos y no envolvían violencia, la pena impuesta al acusado no resultaba crasamente desproporcional con relación a los mismos y, por tanto, no constituia una violación a la prohibición contra castigos crueles e inusitados. Para validar la penalidad impuesta a Rummel, el Tribunal Supremo federal dio peso, entre otros aspectos, a la posibilidad que tenía el acusado bajo el estatuto de reincidencia del estado de Texas a ser elegible para el beneficio de libertad bajo palabra, luego de cumplidos doce (12) años de reclusión. Además, en su sentencia, el tribunal destacó la existencia de una serie de requisitos que tendrían que ser satisfechos bajo las normas del estatuto de reincidencia del estado de Texas antes que un convicto pudiera ser condenado como reincidente a prisión por vida.

Por su parte, en el caso de *Solem v. Helm, supra*, el acusado (Helm) había sido anteriormente convicto por seis delitos graves: tres distintas convicciones por escalamiento en los años 1964, 1966 y 1969; una convicción por obtener dinero mediante falsa representación en 1972; una convicción en 1973 por hurto mayor (grand larceny); y, finalmente, una convicción en 1975 por ser sorprendido por tercera ocasión mientras conducía en estado de embriaguez, lo que también constituia delito grave bajo las leyes de South Dakota.

En 1979, Helm fue nuevamente acusado y convicto por el delito grave de emitir un cheque de cien dólares ($100.00) sin que existiera una cuenta que lo respaldara (no account check). Como resultado de esta última convicción, a la luz de su anterior historial delictivo, a Helm se le condenó a una pena de reclusión por vida, sin la oportunidad de ser considerado para el beneficio de libertad bajo palabra, a tenor con el estatuto de reincidencia del estado.

Posteriormente, Helm presentó un recurso de *hábeas corpus* ante el Tribunal de los Estados Unidos para el Distrito de South Dakota, bajo el argumento de que la pena que le fue impuesta violaba la prohibición constitucional contra castigos crueles e inusitados; dicho foro denegó la expedición del recurso. Más adelante, el Tribunal de Apelaciones para el Octavo Circuito revocó. Dicho foro apelativo entendió que la pena impuesta contra Helm era crasamente desproporcional con respecto a los delitos cometidos por el acusado. Con tales antecedentes, el caso fue llevado a la consideración del Tribunal Supremo de los Estados Unidos. Dicho foro judicial confirmó la determinación emitida por el Octavo Circuito de Apelaciones por entender que, bajo las circunstancias del caso, la pena de separación de la sociedad impuesta a Helm resultaba significativamente desproporcional a la naturaleza de los delitos cometidos por éste y, por tanto, violatoria de la prohibición constitucional contra castigos crueles e inusitados. En su dictamen, el Tribunal Supremo federal sostuvo la procedencia del principio de proporcionalidad como corolario de la prohibición constitucional contra castigos crueles e inusitados:

*"In sum, we hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted." Solem, supra*, pág. 290.

Más adelante, luego de validar la facultad de los estados para castigar a un reincidente más severamente que a un primer ofensor, el tribunal razonó que, si bien las convicciones de Helm fueron por delitos de naturaleza grave bajo las leyes de South Dakota, todos ellos resultaban de violaciones de ley relativamente poco severas, no envolvieron violencia y ninguno se trató de un crimen contra la persona. *Solem*, págs. 296 297. Otras circunstancias que se tomaron en cuenta por el Tribunal Supremo federal para su decisión fueron que, según su apreciación, Helm no era un *"criminal profesional"*. En la referida opinión judicial, se llama la atención al hecho de que el expediente delictivo de Helm indicaba que el acusado era adicto al alcohol y,

consecuentemente, tenía dificultades para mantener un empleo; además, su historial no contenía violencia de ningún tipo. *Solem, supra*, pág. 297, escolio núm. 22.

Por otra parte, en cuanto a la validez de penas establecidas sin que las mismas incluyan la posibilidad de libertad bajo palabra, como en el caso ante nos, resultan muy ilustrativas las palabras expresadas por el tribunal en el escolio núm. 24 de su sentencia en *Solem, supra*, el cual expresa en parte lo siguiente:

*"We raise no question as to the general validity of sentences without possibility of parole. The only issue before us is whether, in the circumstances of this case and in light of the constitutional principle of proportionality, the sentence imposed on this respondent violates the Eight Amendment. Solem." supra*, pág. 297

Básicamente, en su argumentación con respecto a *Rummel, supra*, Santiago deja entrever su percepción de que el Tribunal Supremo federal validó la sentencia de reclusión por vida impuesta al acusado como reincidente, atendiendo meramente a la posibilidad que tenía éste de cualificar para el beneficio de libertad bajo palabra, luego de cumplidos doce (12) años de reclusión. No obstante, lo cierto es que la oportunidad de Rummel de poder ser considerado para libertad bajo palabra al cumplir sus primeros doce (12) años de cárcel fue sólo uno de de los factores tomados en cuenta por el tribunal para llegar a su determinación. Allí también pesó la razonabilidad del esquema legal de reincidencia orquestado por el legislador para que un convicto pudiera ser condenado a reclusión carcelaria por vida. El estatuto estatal de reincidencia aplicable a Rummel gozaba de varios obstáculos o salvaguardas para asegurar que la pena de separación por vida fuera de aplicación solamente a sujetos que hubieren demostrado una marcada resistencia a los intentos del Estado por rehabilitarlo: a) el convicto tenía que haber incurrido en la comisión de por lo menos tres (3) delitos; b) dichos delitos tenían que ser de naturaleza grave; y c) el acusado tenía que haber cumplido pena de reclusión por cada uno de los delitos anteriormente cometidos.

En el caso ante nuestra consideración, si bien es cierto que la ley de 1993, enmendatoria de nuestro estatuto de reincidencia, retiró al reincidente habitual condenado a reclusión perpetua la posibilidad de ser considerado para el beneficio de libertad bajo palabra luego de cumplidos treinta (30) años de reclusión, por otra parte, el Legislador impuso varias salvaguardas para evitar que dicha pena pudiera ser impuesta por la comisión de un delito que, aunque de naturaleza grave, sea de poca seriedad relativa. Como se desprende de nuestro estatuto de reincidencia, según enmendado, la Asamblea Legislativa dispuso que para que un sujeto pueda ser considerado reincidente habitual, éste tiene que cumplir con las siguientes salvaguardas o requisitos: a) tiene que haber sido previamente convicto y sentenciado por dos o más delitos; b) dichos delitos tienen que haber sido de naturaleza grave; c) los delitos tienen que haber sido cometidos en tiempos diversos e independientes unos de otros; posteriormente, el sujeto tiene que incurrir en la comisión de cualquiera de los siguientes delitos específicos: asesinato, robo, incesto, extorsión, violación, sodomía, actos lascivos e impúdicos cuando la víctima fuere menor de catorce años, secuestro, agresión agravada en su modalidad grave, escalamiento agravado, apropiación ilegal agravada de vehículos de motor o sus partes, incendio agravado, sabotaje de servicios públicos esenciales, fuga cuando la persona está cumpliendo sentencia firme o en trámite de apelación por un delito grave, cualquier delito grave en violación a las secs. 561 a 593 del Título 25 y a la Ley Contra el Crimen Organizado, secs. 971 *et seq.* del título 25, violación a las secs. 2401, 2405 y 2411a del Título 24, parte de la Ley de Sustancias Controladas de Puerto Rico, o a las secs. 415 a 418a del Título 25, parte de la Ley de Armas de Puerto Rico, así como también cualquier conspiración para la comisión de dichos delitos o sus tentativas.

Como se puede apreciar, en la ya citada enmienda de 1993 a nuestro estatuto de reincidencia, el Legislador no sólo se aseguró de que la pena de separación permanente de la sociedad fuera impuesta únicamente a sujetos que hubieran demostrado una clara resistencia o imposibilidad de ser rehabilitados, al haber incurrido en la comisión recurrente de delitos de naturaleza grave. Este también se encargó de establecer un mecanismo por medio del cual, para que un sujeto pueda ser declarado reincidente habitual, con la consecuencia de ser condenado a prisión perpetua sin derecho a libertad bajo palabra, el último delito grave cometido por éste tiene

que ser, además, un delito relativamente serio, específicamente de aquellos incluidos en la lista especialmente contenida en la ley, a la cual ya hemos hecho referencia. Entendemos que con tales salvaguardas, nuestra ley de reincidencia difícilmente sucumba frente a ataques basados en el principio de proporcionalidad contenido en la cláusula contra castigos crueles e inusitados de nuestra Constitución.

Nótese que, a tono con las salvaguardas a que nos hemos referido, no es posible en nuestra jurisdicción, tal como ocurrió en los casos de *Rummel* y *Solem, supra*, el que a un convicto por un delito grave de poca seriedad relativa se le declare reincidente habitual y se le condene a reclusión perpetua sin derecho a libertad bajo palabra, aunque haya sido convicto anteriormente por dos delitos graves cometidos en tiempos diversos. Bajo el referido esquema legislativo, al menos el último delito grave junto al cual se alegue reincidencia habitual, tendrá necesariamente que ser uno de los delitos relativamente severos o serios designados expresamente por el Legislador.

Por otra parte, el cuadro circunstancial envuelto en el caso de *Solem v. Helm, supra*, resulta claramente distinguible de aquel relativo al caso de autos. Como ya reseñamos, en *Solem*, el acusado fue convicto en seis ocasiones por delitos de naturaleza grave, aunque de poca severidad relativa tomando en cuenta que los mismos no envolvían violencia ni constituían delitos contra la persona. Luego, Helm es convicto por cometer un séptimo delito de iguales características que sus infracciones anteriores y es condenado, como reincidente, a reclusión por vida sin derecho a ser considerado para libertad bajo palabra. El Tribunal Supremo federal revocó dicha sentencia, en atención a la desproporción de la pena impuesta a Helm con respecto a la seriedad de los delitos por él cometidos, pero: a) dejando intacta la facultad de las legislaturas estatales para imponer castigos más severos a sujetos reincidentes en comparación a primeros ofensores; y, b) dejando claro que en dicho caso no se cuestiona la validez general de sentencias sin posibilidad del beneficio de libertad bajo palabra.

Por el contrario, el panorama fáctico relativo al caso ante nos es muy distinto. Como hemos visto, el historial delictivo anterior de Santiago no sólo incluye delitos de mera posesión de sustancias controladas, como alega el acusado. Dicho historial también contiene una infracción a la Ley de Armas, una tentativa de robo, el delito contra la persona de agresión agravada en su modalidad grave, el cual por definición envuelve violencia, y el delito de posesión de sustancias controladas con intención de distribuirlas, delito que es altamente nocivo a la sociedad en general por los crecientes problemas de salud, adicción y criminalidad derivados de dicha conducta. A lo anterior hay que añadir, además, la nueva convicción de Santiago por el delito de posesión de sustancias controladas con intención de distribución (uno de los delitos graves que permiten una declaración de reincidencia habitual bajo nuestro estatuto), convicción que eventualmente provoca la presentación del recurso que hoy consideramos.

Como se puede apreciar, la situación en que se encuentra Santiago en el presente caso, dista mucho de aquella que ante sí tuvo el Tribunal Supremo federal en *Solem v. Helms, supra*. Contrario a Helms, Santiago ha incurrido repetidamente, no sólo en la comisión de delitos de naturaleza grave, sino, además, en la ejecución de delitos de gran severidad, entre ellos, delitos que envuelven violencia contra la persona y delitos altamente dañinos a la sociedad. A la luz del historial delictivo de Santiago y de la nueva convicción por el delito de posesión y distribución de sustancias controladas, no encontramos que la pena de separación permanente de la sociedad impuesta a Santiago infrinja el principio de proporcionalidad contenido en la prohibición constitucional contra castigos crueles e inusitados.

Finalmente, en el ejercicio de nuestra discreción para entender en errores que, aunque no hayan sido debidamente planteados en etapa apelativa, resulten patentes y que hieran nuestro sentido de justicia, *Hernández v. Espinosa*, ___ D.P.R. ___ (1998), **98 J.T.S. 41;** *Ríos Quiñones v. Adm. de Servicios Agrícolas*, ___ D.P.R. ___ (1996), **96 J.T.S. 71,** resolvemos que el foro sentenciador cometió un claro error de derecho al condenar al convicto-apelante Santiago a cumplir una pena concurrente de veinte (20) años de prisión en el caso núm. ISC97GO124, por el delito de posesión *"simple"* de cocaína, Art. 404 de la Ley de Sustancias Controladas, *supra*.

El Art. 63 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3321, en lo pertinente establece:

*"Salvo lo dispuesto en la sección siguiente, un acto u omisión penable de distintos modos por diferentes disposiciones penales, podrá castigarse con arreglo a cualquiera de dichas disposiciones, pero en ningún caso bajo más de una."*

Está jurisprudencialmente resuelto en nuestra jurisdicción que la mera posesión ilegal de sustancias controladas, tipificada como conducta delictiva en el Art. 404 de la Ley de Sustancias Controladas, *supra*, constituye un delito menor incluido en el delito de posesión de sustancias controladas con intención de distribuirlas, Art. 401 del mismo cuerpo normativo, y que el Ministerio Público no puede imputar ambos delitos a la vez a raíz de un mismo acto. *El Pueblo de Puerto Rico v. Peter Iorio Ormsby y Wildie Sánchez Pérez*, ___ D.P.R. ___ (1994), **94 J.T.S. 155;** *Pueblo v. Meléndez Cartagena*, 106 D.P.R. 338 (1977); *Fuentes Morales v. Tribunal Superior*, 102 D.P.R. 705 (1974); Ernesto L. Chiesa Aponte, *Doble Exposición*, 59 Rev. Jur. U.P.R. 479, (1990), págs. 552 -553.

El concepto de acto u omisión a que se refiere el ya citado Art. 63 del Código Penal, *supra*, no debe circunscribirse al sentido literal de la expresión, esto es, no necesariamente es el acto que denota una actuación específica, sino que puede ser un curso de conducta con un objetivo y propósito determinado. *Pueblo v. Meléndez Cartagena, supra*, citando con aprobación a *González v. Tribunal Superior*, 100 D.P.R. 136 (1971).

Este Tribunal entiende que, como en *Pueblo v. Meléndez Cartagena, supra*, en el presente caso, la prueba desfilada ante el foro de primera instancia en torno a la posesión por Santiago de varios sobres de cocaína fue necesariamente incidental para demostrar la venta que éste realizara y que, además, al momento de los hechos, el apelante perseguía claramente un sólo objetivo: la venta de la droga al agente encubierto. Al amparo de lo anterior, revocamos la sentencia de veinte (20) años de reclusión a que se condenó a Santiago por el delito de posesión simple de sustancias controladas, por violentar lo dispuesto en el primer párrafo del Art. 63 del Código Penal, *supra*, al someter al acusado a castigos múltiples por un mismo acto.

## SENTENCIA

Por los fundamentos antes expuestos, modificamos el dictamen emitido por el Tribunal de Primera Instancia, Sala Superior de Mayaguez, a los efectos de anular la condena de veinte (20) años de reclusión concurrentes impuesta al apelante Isidro Santiago Soto en el caso ISC97GO124 por posesión simple de sustancias controladas, Art. 404 de la Ley de Sustancias Controladas, *supra*. Confirmamos, y quedan en todo su vigor, las sentencias emitidas por el foro judicial de primera instancia en los casos ISC97GO125 y IAP97GO009.

Notifíquese.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General