ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>MIGUEL SKERRET FUENTES<br><br>Apelante | KLAN202200518 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm.: NSCR202100649<br><br>Sobre: Tent. Art. 93(a) C.P. |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, la Jueza Lebrón Nieves y la Jueza Martínez Cordero[1].

*Martínez Cordero, Jueza Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 2 de febrero de 2024.

Comparece ante nos el señor Miguel Skerrett Fuentes (en adelante, señor Skerrett Fuentes y/o apelante) mediante un recurso de *Apelación Criminal.* En su recurso, nos solicita la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior Fajardo (en adelante, TPI). En su *Sentencia,* el TPI condenó al señor Skerrett Fuentes a una pena de veinte (20) años de reclusión bajo el régimen de sentencia suspendida por infringir, en la modalidad de tentativa, el Artículo 93 (a) sobre asesinato en primer grado del Código Penal de Puerto Rico (en adelante, Código Penal).[2]

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

## I

Por hechos acaecidos el 6 de septiembre de 2021, y en esa misma fecha, se celebró contra el apelante, la vista de causa

---

[1] Véase, Orden Administrativa OATA-2023-001 del 9 de enero de 2023, en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución del Hon. Fernando L. Rodríguez Flores.
[2] 33 LPRA § 5142, Art. 93 (a).

Número Identificador

SEN2024_____

probable para arresto al amparo de la Regla 6 de las Reglas de Procedimiento Criminal.[3] En la vista, hubo determinación de causa por tentativa del Artículo 93 (a) del Código Penal[4] y por los Artículos 6.05[5], 6.14[6] y 6.22 de la Ley de Armas[7]. Al apelante se le fijó una fianza de $75,000.00 dólares y se le impuso supervisión electrónica.

El 10 de noviembre de 2021, se celebró la Vista Preliminar al amparo de la Regla 23 de las Reglas de Procedimiento Criminal.[8] En la vista, el foro primario determinó causa para acusar por el Artículo 6.14 de la Ley de Armas[9]; sin embargo, determinó no causa en las otras tres (3) denuncias. Inconforme, el Ministerio Público solicitó la correspondiente Vista Preliminar en Alzada.

Así las cosas, el 10 de diciembre de 2021, se celebró el Acto de Lectura por el Artículo 6.14 de la Ley de Armas.[10] Por otro lado, el 21 de diciembre de 2021, se celebró la Vista Preliminar en Alzada por las otras tres (3) denuncias. Producto de dicha vista, el foro primario determinó causa para acusar en cuanto a las tres (3) denuncias. De lo que sigue, el 22 de diciembre de 2021, se presentaron las tres (3) acusaciones restantes,[11] y a raíz de ello, se celebró la correspondiente Vista de Lectura de Acusación.

Llegado el día del Juicio en su Fondo, el señor Skerrett Fuentes renunció al juicio por jurado, por lo que el Juicio en su Fondo fue celebrado mediante Tribunal de Derecho. Previo a iniciar el Juicio en su Fondo, el señor Skerrett Fuentes hizo alegación de no culpable.[12] Durante el Juicio en su Fondo, declararon tres (3)

---

[3] 34 LPRA Ap. II, R. 6.
[4] 33 LPRA § 5142, Art. 93 (a).
[5] 25 LPRA § 466d, Art. 6.05.
[6] 25 LPRA § 466m, Art. 6.14.
[7] 25 LPRA § 466u, Art. 6.22.
[8] 34 LPRA Ap. II, R. 23.
[9] 25 LPRA § 466m, Art. 6.14.
[10] *Id.*
[11] Hacemos la salvedad que la única *Acusación* que se encuentra en los autos originales del TPI es la del Articulo 93 (a) del Código Penal.
[12] En la Transcripción de la Prueba Estipulada (en adelante, TPO) pág. 13, líneas, 27-19.

testigos: (i) el Agente Francis Echevarría, (ii) el señor Xabiel Feliciano Skerrett y (iii) el señor Skerrett Ortiz.

La prueba testimonial del Ministerio Público consistió en: (i) el Agente Echevarría, (ii) la Agente Loribí Dobal Fernández (en adelante, Agente Dobal)[13] y (iii) el señor Feliciano Skerrett.[14] La prueba presente se identificó en sala, es decir, los tres (3) testigos dijeron su nombre.[15] La Agente Dobal fue quien preparó el documento sobre el funcionamiento del arma que le fue entregada por el Agente Echevarría.[16] Las partes estipularon como Exhibit la Certificación de Prueba de Funcionamiento, Formulario PPR876, relacionado a la querella número 20211206103566.[17] Además, estipularon que, el 27 de septiembre de 2021, la Agente Dobal, recibió de parte del Agente Echevarría la pistola High Standard modelo Supermatic Citation Military, calibre .22, color negra y con el número de serie 2430490, para que se realizara el examen de funcionamiento.[18] La Agente Dobal realizó el examen y obtuvo dos (2) disparos, entiéndase, el resultado fue que el arma era capaz de disparar.[19] Una vez aclaradas las estipulaciones, la Agente Dobal fue relevada por el TPI.[20] El foro primario también recibió prueba documental.

El primer testigo de cargo fue el Agente Echevarría. Las partes estipularon la capacidad del Agente Echevarría, a los efectos de que este era el agente investigador en el caso y que había declarado en los procesos anteriores, entiéndase, en la vista preliminar y en la vista preliminar en alzada.[21] El Agente Echevarría testificó que, el 6 de septiembre de 2021, el señor Feliciano Skerrett se personó en el

---

[13] La Agente Dobal fue relevada de sala luego de que las partes llegaran a ciertas estipulaciones que surgirán de esta *Sentencia*.
[14] En la TPO pág. 1, línea 18 y pág. 2, líneas 1-2.
[15] *Id.,* pág. 4, líneas 21-28.
[16] *Id.,* pág. 7, líneas 8-12.
[17] *Id.,* pág. 7, líneas 17-19.
[18] *Id.,* pág. 7, líneas 19-24.
[19] *Id.,* pág. 7, líneas 24-29.
[20] *Id.,* pág. 8, líneas 16-19.
[21] *Id.,* pág. 14, líneas 21-27.

cuartel de patrullas y carreteras alrededor de las 8:45 a.m.[22] En ese momento, el Agente Echevarría procedió a identificar al señor Skerrett Fuentes en sala.[23] Continuó testificando que el señor Feliciano Skerrett le informó que el señor Skerrett Fuentes le había colocado una pistola color negra en el pecho estando montado en su vehículo (una guagua pickup) y había procedido a halar el gatillo, pero que la munición no salió, es decir, no llegó a disparar la pistola.[24] Declaró que el señor Feliciano Skerrett le indicó que los hechos ocurrieron en las Parcelas Figueroa 235.[25]

El Agente Echevarría testificó que el propósito del señor Skerrett Fuentes era ocasionarle grave daño corporal al señor Feliciano Skerrett.[26] Respecto a las acciones que tomó, el Agente Echevarría testificó que, una vez terminó de conversar en el cuartel con el señor Feliciano Skerrett, se dirigió a un garaje Puma, en el Barrio Palmer frente al cuartel, donde se suponía se encontraba el señor Skerrett Fuentes.[27] El Agente Echevarría intervino con el señor Skerrett Fuentes, quien se encontraba en una bicicleta la cual tenía un cajón en la parte de atrás, lo puso bajo arresto y le leyó las advertencias de ley.[28] Atestiguó que le leyó las advertencias que se encuentran en el Formulario PPR 615.4, que le preguntó si las entendió y que el señor Skerrett Fuentes le contestó en la afirmativa.[29] Expresó que el señor Skerrett Fuentes le hizo unas alegaciones conducentes a que este lo que utilizó fue una cuchilla en contra del señor Feliciano Skerrett.[30] Sostuvo que al registrarlo, entiéndase su ropa y pertenencias, no encontró ningún arma de fuego.[31]

---

[22] *Id.,* pág. 15, líneas 1 y 9-12.
[23] *Id.,* pág. 15, líneas 17-18.
[24] *Id.,* pág. 15, líneas 20-28 y pág. 16, líneas 29-31.
[25] *Id.,* pág. 16, líneas 1-2.
[26] *Id.,* pág. 17, línea 1.
[27] *Id.,* pág. 17, líneas 24-26 y 28.
[28] *Id.,* pág. 18, líneas 8-11.
[29] *Id.,* pág. 18, líneas 12-16.
[30] *Id.,* pág. 18, líneas 27-29.
[31] *Id.,* pág. 20, líneas 3-4.

El Agente Echevarría declaró que, luego procedió a trasladarlo al cuartel, donde una vez más, le leyó las advertencias de ley.[32] En dicho momento, a preguntas sobre si había entendido las advertencias, el señor Skerrett Fuentes no quiso declarar nada más.[33] El Agente Echevarría documentó lo antes mencionado en el Formulario PPR 615.4.[34] Respecto a si realizó alguna investigación para conocer si el señor Skerrett Fuentes tenía licencia, testificó que llamó al centro y que no se encontraba registrado.[35]

Luego, el Agente Echevarría se personó en las Parcelas Figueroa 235. Al llegar, testificó que se identificó, le explicó la razón por la que se encontraba allí y procedió a leerle unas advertencias al señor Skerrett Ortiz.[36] Le preguntó si le autorizaba a registrar la residencia conforme al Formulario PPR 612.1 de consentimiento y allanamiento.[37] Abundó que, dicho formulario se completó el 6 de septiembre de 2021 a las 10:30 a.m.[38] Entonces, procedió a registrar un cuarto y debajo de un "matre" testificó haber observado una pistola negra que encima tenía una munición.[39] Estando allí, procedió completar el Formulario PPR 613.2, es decir, el inventario de la propiedad ocupada.[40] Finalizado el interrogatorio por parte del Ministerio Público, dio inicio el contra interrogatorio por parte de la Defensa.

A preguntas de la Defensa sobre qué le impedía acudir donde un fiscal para una orden de registro y allanamiento, el Agente Echevarría contestó que nada.[41] La Defensa indagó respecto a que el Agente Echevarría solo tenía ante sí unas alegaciones que le había emitido el señor Skerrett Fuentes y que eran contrarias a las

---

[32] *Id.,* pág. 18, líneas 30-31 y pág. 19, línea 1.
[33] *Id.,* pág. 19, líneas 1-2.
[34] *Id.,* pág. 19, líneas 10-11.
[35] *Id.,* pág. 20, líneas 21-23.
[36] *Id.,* pág. 21, líneas 24-25.
[37] *Id.,* pág. 22, líneas 2-4.
[38] *Id.,* pág. 23, líneas 4-6.
[39] *Id.,* pág. 23, líneas 14-16.
[40] *Id.,* pág. 29, líneas 14-26.
[41] *Id.,* pág. 36, líneas 17-21.

realizadas por Feliciano Skerrett, a lo cual este contestó en la afirmativa.[42]

El Ministerio Público procedió con el interrogatorio directo del señor Feliciano Skerrett. Testificó que, el 6 de septiembre, entre las 8:00 a.m. y 8:30 a.m., pasó por casa de su mamá antes de ir a su trabajo.[43] Acentuamos que, el señor Feliciano Skerrett identificó al señor Skerrett Fuentes en sala.[44] Continuando con lo sucedido, el 6 de septiembre, expresó que:

> Pues yo sigo ahí me encuentro en [la] avenida, cojo el solo para virar en dirección hacia Luquillo y cuando viro me percato que está mi tío en la lomita arriba sentado en una silla y mi primo Miguel está al lado parado sin camisa y haciéndome el gesto de jalar gatillo.[45]
> […]
> […], me estaciono y me bajo y me dirijo hacia donde mi tío para hablar con él.[46]
> […]
> Y ahí me percato que viene Miguel saliendo de la casa con una, un arma de fuego en la cintura en el lado derecho y poniéndose una camisa.
> Eh, ¿esa arma de fuego que usted observa cómo era?
> Color negra […][47]
> […]
> Yo me, termino la conversación y me monto en mi guagua para irme del lugar.[48]
> […]
> Cuando me monto en mi guagua y pongo reversa para virar[,] ahí mismo se acerca mi primo y por el lado del chofer…[49]
> […]
> Mete la mano derecha por el cristal de la guagua y intenta dispararme.[50]
> […]
> […] eh, ¿hacia qu[é] lugar[,] si alguno[,] apuntaba dicha arma color negra que usted observ[ó]?
> Hacia el pecho.
> Este ¿a qué distancia[,] si alguna[,] estaba esa arma de su pecho?
> Pegada.
> Eh, ¿Qué[,] si algo[,] usted observa realiza su primo una vez este le pega esa arma al pecho suyo?
> Comienza a jalar el gatillo y como y al arma no disparar con la mano izquierda jalo el carro varias veces a ver si, tratando de que disparar.

---

[42] *Id.,* pág. 36, líneas 27-30.
[43] *Id.,* pág. 39, líneas 12-15.
[44] *Id.,* pág. 40, líneas 16-17.
[45] *Id.,* pág. 40, líneas 23-26.
[46] *Id.,* pág. 41, líneas 17-18.
[47] *Id.,* pág. 42, líneas 16-19.
[48] *Id.,* pág. 42, líneas 29-30.
[49] *Id.,* pág. 43, líneas 1-2.
[50] *Id.,* pág. 43, línea 8.

> Eh, ¿Qué ocurre una vez, este... ¿usted recuerda cuántas veces su primo intent[ó] disparar el arma?
> Varias veces, la cantidad exacta en estos momentos no, no la conté, pero varias veces.
> ¿y cuántas veces recuerda usted que su primo jalo el carro de lao?
> Algunas tres o cuatro.[51]
> [...]
> Pues yo sigo dando reversa[,] ahí mismo llega mi tío y forcejea con él y ahí yo me fui para el cuartel de la policía.[52]

El señor Feliciano Skerrett declaró que, una vez llegó al cuartel, le contó lo sucedido al Agente Echevarría y que este le indicó que tenía que ir donde se encontraba el apelante.[53] Continuó expresando que estuvo en el cuartel hasta que el Agente Echevarría le informó que tenía que ir hasta el Tribunal, que allí se entrevistó con el Fiscal y con el Agente Echevarría, le tomaron una declaración jurada y luego se fue para su casa.[54]

Luego comenzó el contrainterrogatorio. A preguntas de la Defensa, el señor Feliciano Skerrett declaró que, vio el arma de fuego en la cintura del apelante, cuando iba saliendo por el portón y que solo se veía la parte de afuera.[55] Sostuvo que el apelante introdujo su mano por dentro de su vehículo y ahí fue que empezó a halar el gatillo, pero que no salía ninguna bala.[56] Admitió que ninguna bala le cayó encima.[57] Luego, comenzó el redirecto realizado por el Ministerio Público, a cuyas preguntas, el señor Feliciano Skerrett declaró que él vio el arma completa cuando el apelante la sacó, cuando introdujo su mano por la ventanilla de la guagua.[58] Atestiguó que este dejó de observar el arma cuando llegó su tío y forcejeó con el apelante, como que cayeron al piso y este se fue.[59] No hubo recontrainterrogatorio.

---

[51] *Id.,* pág. 43, líneas 11-25.
[52] *Id.,* pág. 43, líneas 28-29.
[53] *Id.,* pág. 47, líneas 27-30.
[54] *Id.,* a la pág. 48, líneas 4-10.
[55] *Id.,* pág. 60 líneas 26-28 y pág. 61, líneas 1-8.
[56] *Id.,* pág. 62, líneas 8-19.
[57] *Id.,* pág. 63, líneas 7-9.
[58] *Id.,* pág. 63, líneas 26-31.
[59] *Id.,* pág. 64, líneas 7-9.

Por otro lado, el tercer y último testigo de cargo fue el señor Skerrett Ortiz. Declaró que residía en la Parcela Figueroa 235, que la casa tenía dos (2) plantas y que él residía abajo con el apelante, quien es su hijo.[60] Sostuvo que, el 6 de septiembre de 2021, hubo un problema entre su sobrino y su hijo, pero que no lo presenció.[61] En relación al problema, el Ministerio Público le preguntó qué agencia de ley y orden se personó a su lugar de residencia, a lo que contestó que el [Agente] Echevarría.[62] Atestiguó que el Agente Echevarría le mostró un papel "una orden para rebuscar"... "pal cuarto del hijo mío",[63] y que de ahí él firmó el consentimiento y entraron al cuarto. Declaró que, cuando el Agente Echevarría buscó, alzó el "matre", la s[á]bana, alz[ó] el "matre" y encontró allí un rev[ó]lver, una pistola.[64] A preguntas del Ministerio Público, el señor Skerrett Ortiz declaró que él no sabía leer y sostuvo que el Agente Echevarría no le hizo advertencias, a lo que contestó, "ninguna".[65] No obstante, testificó que su firma se encontraba en el documento, señalándola como un signo.[66] En relación a la pistola, una vez el Agente Echevarría la encontró, procedieron a salir del cuarto y este último se marchó.[67] No hubo más preguntas.

Concluido el desfile de la prueba, el señor Skerrett Fuentes fue absuelto de los tres (3) cargos por la Ley de Armas. No obstante, fue encontrado culpable en la modalidad de tentativa al Artículo 93 (a) sobre asesinato en primer grado del Código Penal.[68] La Defensa argumentó en solicitud de reconsideración, pero el Tribunal luego de escuchar la argumentación, determinó No Ha Lugar.

---

[60] *Id.,* pág. 66, líneas 5-18.
[61] *Id.,* pág. 66, líneas 21-22.
[62] *Id.,* pág. 66, líneas 29-31 y pág. 67, líneas 1-3.
[63] *Id.,* pág. 67, líneas 6-10.
[64] *Id.,* pág. 67, líneas 18-19.
[65] *Id.,* pág. 68, líneas 7-15.
[66] *Id.,* pág. 69, líneas 24-31.
[67] *Id.,* pág. 69, líneas 14-20.
[68] 33 LPRA § 5142, Art. 93 (a).

El 1 de junio de 2022, el TPI dictó *Sentencia* y le impuso una pena de veinte (20) años de reclusión, con el beneficio de libertad a prueba bajo el régimen de sentencia suspendida y bajo la supervisión del Programa de Comunidad.

Inconforme con la determinación emitida por el TPI en su *Sentencia*, el señor Skerrett Fuentes presentó un recurso de *Apelación Criminal* el 1 de julio de 2022. En el recurso se esbozó que el TPI cometió dos (2) errores:

> Erró el Honorable Tribunal de Primera Instancia al encontrarme culpable en virtud de una prueba que no derrotó mi presunción de inocencia y mucho menos estableció mi culpabilidad más allá de duda razonable.

> No renuncio al derecho de poder presentar errores adicionales de derecho ante este Honorable Tribunal de Apelaciones, tras la debida evaluación del expediente de instancia y la totalidad de la prueba oral desfilada durante el Juicio en su Fondo, por el abogado apelativo a quien le asignen el presente caso. (*Henderson v. US*[,] 133 S Ct. 1121 [(]2013[)]] y *Pueblo v. Soto Ríos*[,] 95 DPR 483 [(]1967[)]].

El 5 de octubre de 2023, el apelante presentó su *Alegato*. Esbozó que, el TPI cometió un error craso y manifiesto de derecho al no determinar la no culpabilidad por el delito de tentativa de asesinato, tras haber determinado la no culpabilidad por los delitos al amparo de la Ley de Armas. Expuso que, la determinación de no culpabilidad se debió a que el Estado no probó más allá de duda razonable que el apelante le hubiese apuntado al testigo en el pecho con la pistola High Standard citation Supermatic calibre .22, número de serie 2430490, color negra. Añadió que tampoco probó más allá de duda razonable que el apelante portara ilegalmente la pistola High Standard citation Supermatic calibre .22, número de serie 2430490, color negra ni la posesión de una munición. Así, las cosas, nos solicitó que revocáramos la *Sentencia* recurrida, y que absolviéramos al apelante del delito de asesinato en primer grado en su modalidad de tentativa.

En su *Alegato,* el apelante modificó los dos (2) errores ya esbozados en el recurso de *Apelación Criminal* para que lean como sigue:

> Erró el Tribunal al declarar culpable a nuestro representado cuando la prueba de cargo no estableció su culpabilidad más allá de duda razonable en violación a sus derechos[,] a la presunción de inocencia y al debido proceso de ley.

> El apelante no renuncia al derecho de poder plantear errores adicionales ante el Honorable Tribunal de Apelaciones. *Henderson v. US,* 133 SCT. 1121 (2013) y *Pueblo v. Soto [Ríos]*, 95 DPR 483 (1967).

No obstante, en su Alegato, el apelante añadió un tercer error:

> Erró el Tribunal de Primera Instancia al declarar culpable al señor Miguel Skerrett Fuentes por el delito de tentativa de asesinato en primer grado del Artículo 93 (a) del Código Penal de 2012 y, a su vez, encontrarle no culpable por llos [sic] artículos 6.05, 6.14 (b) y 6.22 de la Ley de Armas. Esto anterior, contrario a la excepción de veredictos inconsistentes cuando se trata de una misma prueba y hechos jurídicamente inseparables. (Véase **Pueblo v. García Ortiz**, 131 DPR 1032 [(]1992[)].

El 6 de noviembre de 2023, el Pueblo de Puerto Rico, representado por la Oficina del Procurador General, presentó el *Alegato [del] Pueblo.* Contando con la comparecencia de ambas partes, procedemos a disponer del recurso ante nos.

**II**

**A. Apelación Criminal**

El trámite procesal de un recurso de apelación criminal, desde el Tribunal de Primera Instancia, pasando por este Tribunal intermedio, y hasta el Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo), se rige por las Reglas 193 a 217 de las Reglas de Procedimiento Criminal, según enmendadas.[69] Asimismo, las Reglas 23 a 30.1 del Reglamento de nuestro Tribunal[70], rigen el trámite a seguir desde la presentación del recurso de apelación criminal, hasta su perfeccionamiento. La Regla 23 de nuestro

---

[69] 34 LPRA Ap. II, R. 193-217.
[70] 4 LPRA Ap. XXII-B, R. 23-30.1.

Reglamento dispone que, un escrito de apelación criminal contra una sentencia emitida por el foro primario tiene que ser presentado ante el Tribunal de Apelaciones dentro del término jurisdiccional de treinta (30) días, computados a partir de la fecha en que se dictó la sentencia.[71] Como es sabido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[72]

En lo pertinente al caso de autos, destacamos que la Regla 194 de las de Procedimiento Criminal, dispone que una parte puede solicitar la reconsideración de la sentencia o del fallo condenatorio, dentro de un término improrrogable de quince (15) días, desde que la sentencia fue dictada.[73]

### B. Presunción de Inocencia y Duda Razonable

La Carta de Derechos de la Constitución de Puerto Rico garantiza a toda persona acusada de delito el derecho fundamental a la presunción de inocencia.[74] Este imperativo constitucional también se ha incorporado estatutariamente mediante la Regla 304 de las Reglas de Evidencia.[75] Asimismo, la Regla 110 de las Reglas de Procedimiento Criminal reitera el precitado derecho fundamental: "En todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá. [...]"[76]. Por medio de esta norma, se exige que una persona acusada en un proceso criminal se presuma inocente, mientras no se demuestre lo contrario. Ello constituye uno de los imperativos del debido proceso de ley.[77] A tales efectos, nuestro ordenamiento requiere que, para

---

[71] *Id.*, R. 23.

[72] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). *Arriaga v. FSE*, 145 DPR 122, 131 (1998). *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).

[73] 34 LPRA Ap. II, R. 194.

[74] CONST. PR, art. II, § 11. *Pueblo v. Resto Laureano*, 206 DPR 963, 967 (2021). *Pueblo v. De Jesús Mercado*, 188 DPR 467, 475 (2013).

[75] 32A LPRA Ap. VI, R. 304 (1).

[76] 34 LPRA Ap. II, R. 110.

[77] *Pueblo v. Irizarry*, 156 DPR 780, 786 (2002). *Pueblo v. León Martínez*, 132 DPR 746, 764 (1993).

rebatir tal presunción, el Estado establezca la culpabilidad una persona imputada de delito más allá de duda razonable.[78]

Dicho de otro modo, para controvertir la presunción de inocencia se exige un *quantum* probatorio de más allá de duda razonable, por imperativo constitucional.[79] Cabe destacar que duda razonable implica necesariamente aquella que produce insatisfacción o intranquilidad en la conciencia del juzgador respecto a la evidencia presentada en el caso.[80] Sobre este requisito, el Tribunal Supremo ha expresado que:

> El Ministerio Fiscal no cumple con ese requisito presentando prueba que meramente sea "suficiente", esto es, que "verse" sobre todos los elementos del delito imputado; se le requiere que la misma sea "suficiente en derecho". Ello significa que la evidencia presentada, "además de suficiente, tiene que ser satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación" o en un ánimo no prevenido [...] Esa "insatisfacción" con la prueba es lo que se conoce como "duda razonable y fundada".[81]

Así, la presentación de la prueba debe ir dirigida a demostrar la existencia de "cada uno de los elementos del delito, la conexión de estos con el acusado y la intención o negligencia de éste".[82] "La determinación de que cierta prueba es suficiente para demostrar la culpabilidad del acusado más allá de duda razonable es una cuestión de raciocinio, producto de un análisis de todos los elementos de juicio del caso y no una mera duda especulativa o imaginaria".[83]

## C. Peso de la Prueba

El peso de la prueba es la obligación que tiene la parte que afirma la cuestión en controversia, de convencer al juzgador sobre

---

[78] *Pueblo v. Arlequín Vélez,* 204 DPR 117, 146 (2020). *Pueblo v. Toro Martínez,* 200 DPR 834, 855-56 (2018). *Pueblo v. Cabán Torres,* 117 DPR 645, 652 (1986).
[79] *Pueblo v. Santiago,* 176 DPR 133, 142 (2009).
[80] *Pueblo v. Irizarry, supra,* 788.
[81] *Pueblo v. De Jesús Mercado, supra,* 476, citando a *Pueblo v. Cabán Torres, supra.*
[82] *Pueblo v. De Jesús Mercado, Id. Pueblo v. Santiago, supra.*
[83] *Pueblo v. De Jesús Mercado, Id.,* 475-76.

la forma particular en que ocurrieron los hechos que alega.[84] Así, pues, en el juicio existen dos (2) tipos de cargas probatorias: (i) la carga de producir y presentar evidencia para establecer los hechos particulares que componen una controversia dentro de la reclamación; y, (ii) la obligación de persuadir al juzgador para establecer una reclamación conforme a derecho.[85] En lo que respecta a la evaluación y suficiencia de la prueba, las Reglas de Evidencia disponen que:

> La juzgadora o el juzgador de hechos deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los principios siguientes:
> (A) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes.
> (B) La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia.
> (C) Para establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza.
> (D) La evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley.
> (E) La juzgadora o el juzgador de hechos no tiene la obligación de decidir de acuerdo con las declaraciones de cualquier cantidad de testigos que no le convenzan contra un número menor u otra evidencia que le resulte más convincente.
> (F) [...] En los casos criminales, la culpabilidad de la persona acusada debe ser establecida más allá de duda razonable.
> [...]
> (H) Cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial. Evidencia directa es aquélla que prueba el hecho en controversia sin que medie inferencia o presunción alguna y que, de ser cierta, demuestra el hecho de modo concluyente. Evidencia indirecta o circunstancial es aquélla que tiende a demostrar el hecho en controversia probando otro distinto, del cual por s[í] o, en unión a otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia.[86]

---

[84] Emmanuelli Jiménez, Prontuario de Derecho Probatorio Puertorriqueño, Segunda Edición, Ediciones Situm, 2005, pág. 148. E. L. Chiesa, Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales, Tomo II, Publicaciones J.T.S., 2005, pág. 1003.
[85] Prontuario de Derecho Probatorio Puertorriqueño, Id., a las págs. 148 y 150.
[86] 32 LPRA Ap. VI, R. 110.

**D. Apreciación de la Prueba y Estándar de Revisión Apelativa**

La determinación de si la culpabilidad de una persona acusada fue probada más allá de duda razonable, es revisable en apelación, puesto que "la apreciación de la prueba desfilada en un juicio es un asunto combinado de hecho y derecho".[87] Ahora bien, como es sabido, el ejercicio discrecional de la apreciación de la prueba que ejerce el TPI está revestido de confiabilidad y merece respeto y deferencia.[88] Por ello, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[89]

> [...] no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad: la observación.[90]

En vista de lo anterior, nuestro máximo foro ha resuelto que **un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto**.[91] (Énfasis suplido). En consecuencia, al este Tribunal Apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con

---

[87] *Pueblo v. Torres Medina*, 2023 TSPR 50; *Pueblo v. Rodríguez Pagán*, 182 DPR 239, 259 (2011); *Pueblo v. Irizarry*, supra, pág. 788.

[88] *Argüello v. Argüello*, 155 DPR 62, 79 (2001) citando a *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987); *Trinidad v. Chade*, 153 DPR 280, 289 (2001).

[89] *Pueblo v. Santiago, supra*, a la pág. 148; *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

[90] *Pueblo v. Toro Martínez, supra*, a la pág. 857 (2018), citando a *Ortiz v. Cruz Pabón*, 103 DPR 939, 947 (1995).

[91] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).

la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[92]

Con relación al error manifiesto, un juzgador incurre en este cuando de un análisis de la totalidad de la evidencia, este Tribunal queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[93] Por tanto, debe existir base suficiente en la prueba admitida que apoye la determinación del foro.[94]

De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble.[95] Dicho de otro modo, este Tribunal solo podrá intervenir con la apreciación del foro juzgador si, luego de evaluar minuciosamente la prueba del caso, guardamos serias, razonables y fundadas dudas acerca de la culpabilidad del acusado.[96]

En síntesis, a menos que existan los elementos antes mencionados o que la apreciación de la prueba se aleje de la realidad fáctica o que ésta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos.[97]

---

[92] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Pueblo v. Irizarry, supra*, a la pág. 789; *Pueblo v. Maisonave*, 129 DPR 49, 62-63 (1991).
[93] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 772 (2013).
[94] *Pueblo v. Toro Martínez, supra*, a la pág. 859; *Pueblo v. Irizarry, supra*.
[95] *Pueblo v. Martínez Landrón*, 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave, supra*, a la pág. 63; *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2009); *Pueblo v. Irizarry, supra.*; *Pueblo v. Acevedo Estrada, supra.*
[96] *Pueblo v. Casillas, Torres*, 190 DPR 398, 415 y 417 (2014).
[97] *Pueblo v. Arlequín Vélez, supra*, a la pág. 148; *Pueblo v. Maisonave, supra*.

**III**

El recurso de *Apelación* ante nuestra consideración, en síntesis, esboza dos (2) errores que sostiene el apelante fueron cometidos por el foro primario. El primero fue el haber declarado culpable al señor Skerrett Fuentes bajo el fundamento de que la prueba de cargo no estableció su culpabilidad más allá de duda razonable en violación a sus derechos, a la presunción de inocencia y al debido proceso de ley. Por otro lado, el segundo error versa sobre si erró el foro primario al declarar culpable al señor Skerrett Fuentes por el delito de tentativa de asesinato en primer grado del Artículo 93 (a) del Código Penal de 2012, y, a su vez, encontrarle no culpable por los Artículos 6.05, 6.14 (b) y 6.22 de la Ley de Armas bajo el fundamento de la excepción de veredictos inconsistentes cuando se trata de una misma prueba y hechos jurídicamente inseparables. Tras una minuciosa revisión del expediente en su totalidad, así como de la TPO, juzgamos que los errores imputados no fueron cometidos. Veamos.

La determinación que ha hecho el juzgador de los hechos a nivel del foro primario, a los efectos de que, la culpabilidad de la persona imputada ha quedado establecida más allá de duda razonable, es revisable ante esta Curia mediante recurso de apelación como cuestión de derecho.[98] En el caso ante nuestra consideración resulta menester destacar que el Juicio en su Fondo se celebró por Tribunal de Derecho, ya que el apelante renunció a su derecho a juicio por jurado.

De los autos se desprende que se alegó que el apelante se encontraba en la Parcelas Figueroa 235 cuando ocurrieron los hechos. Según alegado, mientras el señor Feliciano Skerrett se encontraba montado en su vehículo (una guagua pickup), el

---

[98] *Pueblo v. Rodríguez Pagán*, 182 DPR 239, 259 (2011).

apelante le apuntó con una pistola, se la pegó al pecho y haló el gatillo varias veces. No obstante, según surge de los hechos, la pistola nunca disparó.

El Artículo 92 del Código Penal define "asesinato" como "dar muerte a un ser humano a propósito, con conocimiento o temerariamente".[99] Por su parte, el Artículo 93 inciso (a) del Código Penal lee como sigue: "Constituye asesinato en primer grado: (a) Todo asesinato perpetrado por medio de veneno, acecho, tortura, o a propósito o con conocimiento".[100] Ahora bien, cuando se intenta cometer el delito, pero no se consuma por causas ajenas a la voluntad, se configura la tentativa del delito. El Artículo 35 del Código Penal define tentativa de la siguiente manera: "Existe tentativa cuando la persona actúa con el propósito de producir el delito o con conocimiento de que se producirá el delito, y la persona realiza acciones inequívoca e inmediatamente dirigidas a la consumación de un delito que no se consuma por circunstancias ajenas a su voluntad".[101] Para que se dé la tentativa de un delito, deben concurrir cuatro (4) requisitos: (i) que se haya realizado una acción u omisión; (ii) que fuera a propósito o con conocimiento, y de forma inequívoca; (iii) que se constituya hasta la fase inmediatamente anterior o el primero de los actos exigidos por el delito tipificado; y, (iv) que el resultado delictivo no se verifique o consuma por causas ajenas a la voluntad del actor.[102]

Por otro lado, debemos hacer referencia a los tres (3) artículos de la Ley de Armas relacionados al caso en cuestión. El Artículo 6.05 de la Ley de Armas aborda lo relativo a la portación, transportación o uso de armas de fuego sin licencia. Así, pues dicho artículo lee como sigue:

---

[99] 33 LPRA § 5141, Art. 92.
[100] 33 LPRA § 5142, Art. 93 (a).
[101] 33 LPRA § 5048, Art. 35.
[102] D. Nevares-Muñiz, *Código Penal de Puerto* Rico, San Juan, Instituto para el Desarrollo del Derecho, Inc., 2015, págs. 70-7 1.

Toda persona que porte, transporte o use cualquier arma de fuego, sin tener una licencia de armas vigente, salvo lo dispuesto para los campos de tiro o lugares donde se practica la caza, incurrirá en delito grave […]

No obstante, cuando se trate de una persona que (i) esté transportando o portando un arma de fuego que está registrada a su nombre, (ii) tenga una licencia de armas expedida a su nombre que está vencida, (iii) no se le impute la comisión de cualquier delito grave que implique el uso de violencia, (iv) no se le impute la comisión de un delito menos grave que implique el uso de violencia, y (v) el arma de fuego transportada o portada no esté alterada ni mutilada, dicha persona incurrirá en un delito menos grave[…]

Toda persona que esté transportando un arma de fuego sin tener licencia para ello que no cumpla con los requisitos (i) y (ii) del párrafo anterior, pero que cumpla con los requisitos (iii), (iv) y (v), y que además pueda demostrar con preponderancia de la prueba que advino en posesión de dicha arma de fuego por vía de herencia o legado, y que el causante de quien heredó o adquirió el arma por vía de legado tuvo en vida una licencia de armas, delito menos grave […]

[…]

Se considerará como atenuante cuando el arma esté descargada y la persona no tenga municiones a su alcance. Se considerará como "agravante" cualquier situación en la que el arma ilegal se utilice en la comisión de cualquier delito o su tentativa.[103]

[…]

En lo que respecta al Artículo 6.14 inciso (b) de la Ley de Armas dispone lo relativo a disparar o apuntar armas de fuego. Esboza dicho artículo lo siguiente:

Incurrirá en delito grave […], toda persona que, salvo en casos de legítima defensa, propia o de terceros, o de actuaciones en el legítimo desempeño de funciones oficiales o actividades legítimas de deportes:
[…]
**(b) intencionalmente apunte hacia alguna persona con un arma de fuego, aunque no le cause daño a persona alguna**.[104] (Énfasis suplido).
[…]

El último artículo aquí concerniente, el Artículo 6.22 de la Ley de Armas envuelve lo relativo a la fabricación, distribución, posesión, uso e importación de municiones. A tenor, dicho artículo lee como sigue:

Se necesitará una licencia de armas vigente, de armero o ser un agente del orden público, según sea el caso, para […] comprar, […] guardar, almacenar, […] o en

---

[103] 25 LPRA § 466d, Art. 6.05.
[104] 25 LPRA § 466m, Art. 6.14.

cualquier otra forma disponer de, poseer, usar, portar o transportar municiones, conforme a los requisitos exigidos por esta Ley. Se necesitará un permiso expedido por el Negociado de la Policía para comprar pólvora. Toda infracción a este Artículo constituirá delito grave [...]
[...]
Será considerado como circunstancia agravante al momento de fijarse la sentencia, incurrir en cualquiera de las conductas descritas en este Artículo cuando las municiones sean de las comúnmente conocidas como "armor piercing".[105]
[...]

Una figura que ha sido utilizada en nuestra jurisprudencia local lo es la de los veredictos inconsistentes. A esos efectos, nuestro Alto Foro ha sostenido que: "[...] de ordinario no constituye error que dé lugar a la revocación de una convicción el mero hecho de que el jurado que intervenga en un proceso criminal en particular emita, respecto a diferentes pliegos acusatorios, veredictos que no guardan la más absoluta consistencia lógica entre sí".[106] **A diferencia del caso de *Pueblo v. Cabán Torres*, en el caso ante nuestra consideración no fue ante un jurado que se celebró el Juicio en su Fondo, sino, ante un Tribunal de Derecho, por lo que la determinación del juez constituye un fallo.**

El foro primario quedó convencido de que tratándose que los delitos imputados tienen elementos distintos, los mismos quedaron probados más allá de duda razonable en cuanto a la tentativa de asesinato. Consecuentemente, con el fallo emitido en el caso de autos, luego de desfilada la prueba, es forzoso concluir que el juzgador de los hechos razonó que los testimonios presentados merecían credibilidad y concluyó que, en efecto, el Ministerio Público logró establecer los elementos del delito que le fue imputado al apelante, a saber, tentativa de asesinato, según tipificado en el Artículo 93 (a) del Código Penal.

---

[105] Art. 6.22, 25 LPRA § 466u.
[106] *Pueblo v. Caban Torres,* 117 DPR 645, 657 (1986). *Pueblo v. Medina Ocasio,* 98 DPR 302 (1970). *Pueblo v. Cortés,* 99 DPR 679 (1971). *Pueblo v. Figueroa Castro,* 102 DPR 279 (1974). *Pueblo v. Cruz Negrón,* 104 DPR 881 (1976). *Pueblo v. Millán Meléndez,* 110 DPR 171 (1980).

Bajo el crisol doctrinario, los foros apelativos no intervendrán en la discreción de los foros primarios a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción.[107] Cabe señalar que, el foro primario se encuentra en mejor posición para evaluar y adjudicar la credibilidad de un testigo.[108] De acuerdo con la Regla 110 de las Reglas de Evidencia: "La evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley".[109] La discreción que se le otorga al foro primario se fundamenta en el contacto con los litigantes y la prueba que se haya presentado.[110] Es menester recordar que, nuestro máximo foro ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[111] Quiérase decir que, este Tribunal solo podrá intervenir con la apreciación del foro juzgador si, luego de evaluar minuciosamente la prueba del caso, guardamos serias, razonables y fundadas dudas acerca de la culpabilidad del acusado.[112]

En este caso no hubo error manifiesto, ni parcialidad o prejuicio en la apreciación de la prueba, que nos mueva a intervenir con lo actuado por la primera instancia judicial. Sin intención de ser reiterativos, luego de haber examinado con detenimiento la totalidad de los autos originales ante nuestra consideración, incluyendo la transcripción de la prueba oral, somos del criterio de que los errores esgrimidos no fueron cometidos por el foro primario, por lo que procede que confirmemos la *Sentencia* apelada.

---

[107] *Banco Popular de Puerto Rico v. Gomez Alayon*, 2023 TSPR 145. *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253, 273 (2021). *Umpierre Matos v. Juelle, Mejía*, 203 DPR 254, 276 (2019). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).
[108] *Pueblo v. García Colón I*, 182 DPR 129, 165 (2011).
[109] 34 LPRA Ap. II, R. 110.
[110] *Banco Popular de Puerto Rico v. Gomez Alayon*, 2023 TSPR 145.
[111] *Coop. Seguros Múltiples de P.R. v. Lugo, supra.*
[112] *Pueblo v. Casillas, Torres, supra.*

## IV

Por los fundamentos que anteceden, los cuales hacemos formar parte de esta *Sentencia,* se *confirma* la misma.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Lebrón Nieves concurre sin opinión escrita.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones