Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| UNIVERSAL INSURANCE COMPANY, POPULAR AUTO<br><br>Apelante<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO; SECRETARIO DE JUSTICIA Y SUPERINTENDENTE DE LA POLICÍA<br><br>Apelado | TA2025AP00235 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: MZ2023CV00815<br><br>Sobre: Impugnación de Confiscación |
| --- | --- | --- |

Panel integrado por su presidente, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de octubre de 2025.

El 30 de junio de 2025, el Tribunal de Primera Instancia (TPI, foro primario o foro apelado), Sala Superior de Mayagüez, pronunció una *Sentencia*, notificada y archivada en autos el 3 de julio de 2025.[1] Mediante esta determinación, el foro primario declaró *no ha lugar* la *Demanda* presentada por Universal Insurance Company (Universal) y Popular Auto (en conjunto, apelantes). Consecuentemente, desestimó la causa de acción de epígrafe presentada por los apelantes contra el Estado Libre Asociado de Puerto Rico (ELA), el Secretario de Justicia (Secretario) y el Superintendente de la Policía de Puerto Rico (Superintendente) (en conjunto, apelados).

Mediante el recurso de apelación incoado el 13 de agosto de 2025, Universal y Popular Auto nos solicitan que revoquemos la *Sentencia* y se declare ha lugar la *Demanda*.[2]

---

[1] *Sentencia*, SUMAC en el caso MZ2023CV00815, entrada 36.
[2] *Recurso de Apelación*, SUMAC-TA en el recurso TA2025AP00235, entrada 1.

El 17 de octubre de 2025, el Gobierno de Puerto Rico, representado por la Oficina del Procurador General de Puerto Rico, presentó su *Alegato.*

Examinados los escritos a la luz del derecho aplicable y por los fundamentos que expondremos a continuación, *confirmamos* la *Sentencia* apelada.

## I.

El 24 de marzo de 2023, la Policía de Puerto Rico ocupó el vehículo marca Toyota, modelo Corolla, con tablilla INC-173, registrado a favor de Joel Ortiz Concepción, por su uso en una supuesta infracción a los Artículos 13.02, 10.05 y 3.23 (a) de la *Ley de Vehículos y Tránsito de Puerto Rico*, Ley Núm. 22-2000, 9 LPRA sec. 5001, *et seq.*

El 29 de marzo de 2023, el tribunal ordenó el registro y allanamiento del vehículo incautado. Luego de intervenir con el auto, se ocupó dentro de él una pistola alterada color negro de calibre 9mm; esta no tenía número de serie. Además, se hallaron 2 cargadores negros marca Glock de calibre 9mm, con 17 municiones y 31 municiones, respectivamente. Asimismo, incautaron 3 bolsas plásticas transparentes con cierre a presión que contenían un polvo compacto y blancuzco que luego fue identificado forensemente como cocaína en su modalidad de *crack*; encontraron también 3 bolsas con cierre a presión con logos rojos que contenían pequeñas bolsitas plásticas de múltiples colores. Por último, aprehendieron una balanza digital marca AWS de color negro y una cartera negra de un tamaño aproximado de 12"x12".

El 21 de abril de 2023, la Junta de Confiscaciones del Departamento de Justicia notificó la orden de confiscación a Universal y Popular Auto, acreedores del gravamen del vehículo. El 17 de mayo de 2023, Universal y Popular Auto presentaron la demanda de epígrafe en la que impugnaron la validez de la

confiscación llevada a cabo por el Estado.[3] Alegaron que la confiscación fue ilegal, arbitraria y caprichosa, ya que no había motivos fundados para la expedición de la orden de registro; por lo tanto, se registró el vehículo ilícitamente.

El ELA presentó su contestación a la demanda el 20 de junio de 2023.[4] Planteó que la confiscación se realizó en el ejercicio de un deber ministerial hecho de buena fe y al amparo de la autoridad que le confiere la *Ley Uniforme de Confiscaciones de 2011*, Ley Núm. 119-2011, 34 LPRA sec. 1724 *et seq.*, por lo cual se presume como correcta y legal.

Por los hechos que motivaron la confiscación, el Pueblo presentó cargos por violación a los Artículos 6.05, 6.09 y 6.22 de la *Ley de Armas de Puerto Rico*, Ley Núm. 168-2019, 25 LPRA sec. 461, *et seq.*, y a los Artículos 401 y 412 de la *Ley de Sustancias Controladas de Puerto Rico*, Ley Núm. 4 de 23 de junio de 1971, 24 LPRA sec. 2101, *et seq.*

El juicio en su fondo fue celebrado el 4 de noviembre de 2024, mediante videoconferencia.[5]

Mediante la *Sentencia* emitida el 30 de junio de 2025 y notificada el 3 de julio de 2025, el foro primario declaró no ha lugar la *Demanda* presentada por Universal y Popular Auto.[6] En su dictamen, el tribunal estableció como hechos probados, los siguientes:

> 1. El 24 de marzo de 2023, fue ocupado el Vehículo Marca Toyota, modelo Corolla S, Tablilla INC-173 del año 2015 por la Policía de Puerto Rico, el cual fue tasado en $11,000 dólares.
>
> 2 El vehículo aparece registrado a favor de Joel Ortiz Concepción y no fue reportado como hurtado.

---

[3] *Demanda*, SUMAC en el caso MZ2023CV00815, entrada 1.
[4] *Contestación a la Demanda*, *Íd.*, entrada 4.
[5] *Transcripción de la Prueba Oral (TPO)*, SUMAC-TA en el recurso TA2025AP00235, entrada 4, anejo 1.
[6] *Sentencia*, SUMAC en el caso MZ2023CV00815, entrada 36.

3. La Orden de Confiscación se emitió el día 29 de marzo de 2023 y la Notificación de la Confiscación se realizó el 21 de abril de 2023.

4. El Estado presentó varios cargos por violación a los Artículos 6.05, 6.09, 6.22 de la Ley de Armas de Puerto Rico y Artículos 401, 412 de la Ley de Sustancias Controladas de Puerto Rico.

5. El 24 de marzo de 2023, el Agente Herminio S[á]nchez Ramos y el Sargento Duamel González Irizarry como parte del patrullaje preventivo se encontraban en la Carretera #2 km 157.7 en Mayagüez PR, cuando observa un vehículo conducido marca Toyota, Modelo Corolla S, año 2015, Tablilla INC-173 en violación al Artículo 3.23 (a), 10.05 y 13.02 de la Ley 22-2000, Ley de Vehículos y Tránsito de Puerto Rico.

6. El Sargento Duamel González Irizarry pudo intervenir con el vehículo y al acercársele a los ocupantes por el lado del conductor se percató de un olor a marihuana y que había movimiento dentro del vehículo como ocultando algo. Los agentes se identificaron e informaron el motivo de la intervención y estos seguían moviendo sus manos de manera sospechosa por lo que le solicitaron que pusieran sus manos en donde se pudieran ver ante la preocupación de la presencia de un arma de fuego. A los ocupantes les solicitaron que bajaran del vehículo, estos bajaron del vehículo y el conductor manifestó que estaba en probatoria mostrándose poco cooperador. Los agentes procedieron a arrestar a los ocupantes y a sellar el vehículo. El Agente Herminio Sánchez Ramos solicitó al Tribunal una Orden de Registro y Allanamiento para el vehículo Marca Toyota, Modelo Corolla S, año 2015, Tablilla INC-173. El Tribunal expidió la Orden de Registro y Allanamiento del vehículo.

7. De esta intervención se ocupó dentro del vehículo un arma alterada, pistola color negra calibre 9mm sin número de serie, 2 cargadores color negro marca Glock Calibre 9mm con 17 municiones y 31 municiones, 3 bolsas plásticas transparentes cierre a presión conteniendo polvo compacto de cocaína en modalidad de crack, 3 bolsas plásticas transparentes cierre a presión con logos rojos, conteniendo un sin número de bolsitas de menor tamaño y diferentes colores, 1 balanza digital marca AWS color negra, 1 cartera negra de aproximadamente 12"x12".

8. El vehículo de motor fue ocupado por utilizarse en violación a los Artículos 6.05, 6.09, 6.22 de la Ley de Armas de Puerto Rico y Artículos 401, 412 de la Ley de Sustancias Controladas de Puerto Rico.

9. El Agente Edwin del Valle Caraballo realizó la prueba de campo a la sustancia ocupada la cual arrojó positivo a cocaína.

10. Los agentes consultaron con el fiscal de turno, el cual ordenó la presentación de cargos criminales y la confiscación del vehículo de motor.[7]

El tribunal apelado, luego de evaluar la prueba documental y aquilatar la prueba testifical presentada, confirió entera credibilidad a los testigos de los apelados y consignó que la actuación del Estado fue conforme a derecho en la ocupación y posterior confiscación del vehículo. Así, pronunció que los apelantes "no [lograron] derrotar la presunción de legalidad y corrección de la confiscación efectuada por el Estado…. [E]l vehículo ocupado y confiscado por el Estado [m]arca Toyota, [m]odelo Corolla S, año 2015, [t]ablilla INC-173 se utilizó en violación a la ley".[8]

Inconformes con el dictamen pronunciado, Universal y Popular Auto presentaron una *Moción de Reconsideración* el 16 de julio de 2025.[9] El 18 de julio de 2025, el foro apelado denegó el petitorio de reconsideración instado.[10]

Insatisfechos aún, los apelantes instaron el presente recurso y formularon el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia, Sala de Mayagüez al declarar no ha lugar la *Demanda* de impugnación de confiscación y al determinar que la parte demandante no logró rebatir la presunción de corrección y legalidad que cobija las confiscaciones según las disposiciones de la Ley Núm. 119-2011.

En su recurso, los apelantes arguyen que el foro primario erró al darle entera credibilidad a los testimonios vertidos por los agentes del orden público en el juicio en su fondo, ya que la orden de registro y allanamiento expedida para inspeccionar el vehículo ocupado iba dirigida a buscar la sustancia controlada conocida como marihuana. No obstante, mencionan que el resultado del registro propició la incautación por parte de los agentes de la droga conocida como cocaína, en su modalidad de *crack,* y un arma de fuego. Los

---

[7] *Íd.,* págs. 2-4 (notas al calce omitidas).
[8] *Íd.*, pág. 11.
[9] *Moción de Reconsideración, Íd.*, entrada 37.
[10] *Resolución Interlocutoria, Íd.*, entrada 38.

apelantes plantean que ese hecho invalida la confiscación, porque, a su juicio, resulta inverosímil que los agentes detectaran olor a marihuana, pero no se encontrara evidencia de dicha sustancia una vez se registra el vehículo. Por ello, razonan que el TPI debió determinar que el registro del vehículo fue ilegal y, por tanto, la confiscación del vehículo nula, al no existir motivos fundados para expedir la orden de registro.

En el *Alegato* en oposición, el Gobierno de Puerto Rico arguye que los apelantes no rebatieron la presunción de corrección que cobija a las confiscaciones realizadas por el Estado, ni tampoco establecieron que el foro apelado hubiera actuado con pasión, prejuicio o incurriera en error manifiesto al apreciar la prueba desfilada en el juicio. Precisa que no solo fue el olor a marihuana lo que llamó la atención de los agentes, sino que también éstos pudieron observar que los ocupantes del vehículo estaban nerviosos y realizaban movimientos como queriendo ocultar algo y, además, uno de los ocupantes expresó estar en probatoria por haber infringido la Ley de Sustancias Controladas. Se adujo que, de todas formas, en el vehículo ocupado se encontraron otros bienes ilegales que validaron la ocupación y confiscación del vehículo. Por lo cual, el Gobierno de Puerto Rico deduce que procede confirmar la decisión apelada.

## II.

### A.

Es norma conocida que los tribunales apelativos ni intervendrán con las determinaciones de hechos ni con las adjudicaciones de credibilidad realizadas por el TPI, al menos que dicho foro haya incurrido en error manifiesto, pasión, prejuicio o parcialidad.[11] Nuestro máximo Tribunal ha indicado que un

---

[11] *Rivera Menéndez v. Action Service,* 185 DPR 431, 444 (2012); *S.L.G. Rivera Carrasquillo v. A.A.A.,* 177 DPR 345, 356 (2009).

juzgador incurre en pasión, prejuicio o parcialidad cuando actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que someta prueba alguna".[12] Por otra parte, incurre en error manifiesto cuando la apreciación de la prueba se aparta de la realidad fáctica o es inherentemente imposible o increíble.[13]

Asimismo, los tribunales superiores solo podrán intervenir con las conclusiones cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico sobre la totalidad de la prueba.[14] Lo anterior se debe a que los jueces del foro primario son quienes están en mejor posición de aquilatar la prueba y adjudicar credibilidad, lo cual incluye observar el comportamiento de los testigos mientras ofrecen su testimonio.[15] De hecho, "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley".[16] Sin embargo, los foros apelativos solo cuentan con "récords mudos e inexpresivos".[17] Por lo tanto, son pocos los casos donde se ha concluido que el foro de instancia incurrió en pasión, prejuicio, parcialidad o error manifiesto.[18]

Conforme a la Regla 42.2 de las de Procedimiento Civil, "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador

---

[12] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).
[13] *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018).
[14] *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).
[15] *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759, 778-779 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021).
[16] Regla 110 (D) de Evidencia, 32 LPRA VI, R. 110; *Rivera Menéndez v. Action Service, supra*, pág. 444; *S.L.G. Rivera Carrasquillo v. A.A.A., supra*, pág. 357.
[17] *Rivera Torres v. Díaz López*, 207 DPR 636, 658 (2021) (citando a *S.L.G. Rivera Carrasquillo v. A.A.A., supra*, pág. 356).
[18] *Dávila Nieves v. Meléndez Marín, supra*, pág. 771.

para juzgar la credibilidad de los testigos".[19] La intervención de un foro apelativo con la evaluación de la prueba testifical procede "'en casos en que un análisis integral de dicha prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia'".[20] Por ende, la parte apelante que cuestione una determinación de hechos realizada por el foro primario debe fundamentar la existencia de pasión, prejuicio o parcialidad, o error manifiesto.[21]

Ahora bien, a pesar de la deferencia judicial, cuando las conclusiones de hecho del TPI están basadas en prueba pericial o documental, el tribunal revisor se encuentra en la misma posición que el foro recurrido.[22] Ante tales circunstancias, el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio con relación a la apreciación y evaluación de la prueba pericial documental, incluso para descartarla, aunque resulte técnicamente correcta.[23] De igual modo, podrán sustituir el criterio de los tribunales de primera instancia cuando, a tenor con la prueba admitida, no exista base suficiente que apoye su determinación.[24]

**B.**

La Cuarta Enmienda de la Constitución de Estados Unidos y el Artículo II, Sec. 10 de nuestra Constitución protegen el derecho de los ciudadanos contra registros, incautaciones y allanamientos irrazonables.[25] La Regla 234 de las de Procedimiento Criminal establece el mecanismo procesal mediante el cual el agraviado por un allanamiento o registro ilegal puede solicitar la supresión de la

---

[19] 32 LPRA Ap. V, R. 42.2.

[20] *S.L.G. Rivera Carrasquillo v. A.A.A.*, *supra*, pág. 356 (citando a *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986)).

[21] *S.L.G. Rivera Carrasquillo v. A.A.A.*, *supra*, pág. 356; *Flores v. Soc. de Gananciales*, 146 DPR 45, 50 (1998).

[22] *González Hernández v. González Hernández, supra*, pág. 777.

[23] *Íd.*; *Municipio de Loíza v. Sucns. De Suárez et al.*, 154 DPR 333, 363 (2001).

[24] *Pueblo v. Hernández Doble*, 210 DPR 850, 865 (2022); *Gómez Márquez v. Periódico el Oriental Inc.*, 203 DPR 783, 794 (2020).

[25] *Pueblo v. Salamanca Corchado*, 210 DPR 582 (2022); *Pueblo v. Rivera Surita*, 202 DPR 800, 805 (2019); *Pueblo v. López Colón*, 200 DPR 273, 283 (2018).

evidencia obtenida.[26] La moción de supresión de evidencia debe exponer los fundamentos e incluir los hechos o razones específicas o precisas sobre las cuales se sostiene.[27]

La norma general requiere que se obtenga una orden judicial previa a efectuar un registro o allanamiento.[28] Por eso, todo registro, allanamiento o incautación que realice el Estado se presume irrazonable cuando se realiza sin orden judicial previa.[29]

Ahora bien, el Estado puede demostrar que las circunstancias particulares en el caso justificaron la intervención policial sin la referida orden judicial, constituyéndose así una excepción a la norma general de previa orden judicial. Una de las situaciones en las que no es indispensable la orden judicial previa por no existir una expectativa razonable de intimidad, ocurre cuando la evidencia fue observada a plena vista.[30]

Los requisitos para la aplicación de la doctrina de evidencia a plena vista son: (1) el artículo debe haberse descubierto por estar a plena vista y no en el curso o por razón de un registro; (2) el agente que observa la prueba debe haber tenido derecho previo a estar en la posición desde la cual podía verse tal prueba; (3) debe descubrirse el objeto inadvertidamente, y (4) la naturaleza delictiva del objeto debe surgir de la simple observación.[31]

La evidencia a plena vista tiene una vertiente conocida como la evidencia a pleno olfato. En esta, aplica la doctrina de modo similar y con los mismos requisitos, la única diferencia siendo que el agente percibe la evidencia con su olfato en vez de su vista.[32]

---

[26] 34 LPRA Ap. II, R. 234.
[27] *Pueblo v. Blase Vázquez*, 148 DPR 618, 633 (1999).
[28] *Pueblo v. López Colón, supra*, pág. 284.
[29] *Íd.*, págs. 287-288.
[30] *Íd.*, pág. 288; *Pueblo v. Báez López*, 189 DPR 918, 930 (2013).
[31] *Pueblo v. Muñoz, Colón y Ocasio*, 131 DPR 965, 987 (1992).
[32] Véase *Pueblo v. Acevedo Escobar*, 112 DPR 770, 779 (1982) en lo que concierne a la vertiente de evidencia a pleno olfato.

Tampoco es necesaria una orden judicial previa cuando el registro es incidental a un arresto válido.[33]

A tenor con la Regla 11 (a) de las de Procedimiento Criminal, *supra*, un agente del orden público puede realizar un arresto sin previa orden judicial "cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia".[34] Un agente del orden público tiene "motivos fundados" para arrestar a una persona si tiene conocimiento o información que lleva a una persona ordinaria y prudente a creer que la persona a ser arrestada ha cometido un delito público, razón por la cual es necesaria la evaluación de las circunstancias específicas de cada caso.[35] Por ende, lo determinante para convalidar el arresto sin orden es si la información que tenía el agente al momento de efectuar el arresto sin orden hubiera sido suficiente para obtener una orden de arresto.[36]

## c.

La confiscación "es el acto mediante el cual el Estado se adjudica bienes que han sido utilizados para la comisión de determinados delitos".[37]

El proceso de confiscación tiene dos modalidades. La primera se le conoce como *in personam* y es de naturaleza penal y forma parte del proceso criminal dirigido contra el presunto autor del delito. Por ello, si en el proceso criminal se encuentra culpable a la persona imputada, la sentencia impondrá como sanción la confiscación del bien incautado.[38]

La segunda modalidad se define como un proceso civil de naturaleza *in rem.* En otras palabras, está dirigido contra la propia

---

[33] *Pueblo v. Báez López,* 189 DPR 918, 930 (2013).
[34] 34 LPRA Ap. II, R. 11 (a).
[35] *Pueblo v. Calderón Díaz,* 156 DPR 549, 556 (2002).
[36] *Íd.,* pág. 558.
[37] *Reliable Financial v. ELA,* 197 DPR 289, 296 (2017).
[38] *Coop. Seg. Múlt. v. E.L.A.,* 180 DPR 655, 664 (2011).

cosa que, por ficción legal, se considera ofensora; y no contra su dueño, poseedor, encargado o persona con interés.[39] Por consiguiente, la confiscación *in rem* es una acción independiente de la acción penal que por un mismo delito el Estado puede incoar contra un sospechoso en particular, de haber alguno. Así, la confiscación *in rem* se puede efectuar antes de acusar a la persona, antes de que exista una declaración de culpabilidad o de absolución, o antes, incluso, de que se presente algún cargo criminal.[40]

El Artículo 9 de la Ley Núm. 119-2011, conocida como la *Ley Uniforme de Confiscaciones de 2011*, permite que el Estado confisque aquella "propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos graves se encuentren tipificados en el Código Penal de Puerto Rico, en las **leyes de sustancias controladas**, **de armas** y explosivos, … **leyes de vehículos y tránsito**, … y en aquellos estatutos … en los que por ley se autorice la confiscación".[41] Dicha ley es una excepción "al mandato constitucional que prohíbe tomar propiedad privada para fines públicos sin justa compensación".[42] Ello, sujeto a que se siga el debido proceso de ley.[43]

Por su parte, el Artículo 15 de la Ley Núm. 119-2011, *supra,* establece que "se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro procedimiento relacionado a los mismos hechos".[44] Por tanto, la ley precisa que la parte demandante tiene el peso de la prueba para derrotar la presunción.[45]

---

[39] *Reliable Financial v. ELA, supra*, págs. 296-297.
[40] *Coop. Seg. Múlt. v. E.L.A., supra*, pág. 668.
[41] 34 LPRA sec. 1724f. (Énfasis suplido).
[42] *Coop. Seg. Múlt. v. E.L.A., supra*, pág. 663.
[43] *Íd.*, pág. 663, n. 10.
[44] 34 LPRA sec. 1724*l*.
[45] *Íd.*

**D.**

En lo que concierne a las confiscaciones, el Artículo 512 de la *Ley de Sustancias Controladas de Puerto Rico*, dispone lo siguiente:

(a) Los siguientes bienes estarán sujetos a confiscaciones por el Estado Libre Asociado de Puerto Rico:

(1) Toda sustancia controlada fabricada, distribuida, dispensada o adquirida, infringiendo las disposiciones de esta ley.

(2) Toda materia prima, parafernalia, producto o equipo de cualquier clase que se use o se proyecte usar en la fabricación, confección de compuestos, elaboración, entrega, importación, o exportación de cualquier sustancia controlada, infringiendo las disposiciones de esta ley.

(3) Toda propiedad que se use o esté destinada a usarse como envase de la propiedad descrita en los apartados (1) y (2) de este inciso.

**(4) Todo medio de transporte, incluyendo naves aéreas, vehículos, bestias o embarcaciones, que se usen o se destinen para transportar o facilitar en alguna forma la transportación, venta, recibo, posesión o encubrimiento de la propiedad descrita en los apartados (1) y (2) de este inciso.**

(…).

(b) **Cualquier propiedad sujeta a confiscación de acuerdo con la cláusula (4) del inciso (a) de esta sección será incautada siguiendo el procedimiento establecido por la** Ley Núm. 39, de 4 de junio de 1960, según enmendada, conocida como **Ley Uniforme de Confiscación de Vehículos**, Bestias y Embarcaciones [derogada, actualmente sustituida por la Ley Núm. 119-2011, según enmendada, conocida como Ley Uniforme de Confiscaciones de 2011]. [46]

**III.**

Universal y Popular Auto alegan que el registro realizado al vehículo fue uno ilegal por carecer de motivos fundados (causa probable) para la expedición de la orden, por lo cual la confiscación realizada es ilícita y procede la devolución del automóvil a los apelantes. Así, arguyen que se rebatió la presunción de corrección y legalidad establecida por la Ley Núm. 119-2011, *supra*, con la

---

[46] Ley Núm. 4 de 23 de junio de 1971, 24 LPRA sec. 2512. (Énfasis suplido).

prueba presentada sobre el hecho de que el motivo fundado para incautar y eventualmente expedir la orden de registro y allanamiento fue el olor a marihuana que emanaba del vehículo percibido por los agentes, y, como no se encontró esa sustancia controlada cuando se registró el automóvil, el registro fue uno ilegal.

Como se desprende de la transcripción del juicio en su fondo, el agente Herminio Sánchez Ramos y el sargento Duamel González Irizarry detuvieron el vehículo disputado debido a que los pasajeros no utilizaban el cinturón de seguridad y porque los tintes de los cristales no cumplían el porcentaje de visibilidad requerido en ley[47]; ambas infracciones mencionadas son faltas administrativas. Tras los agentes del orden público intervenir con ellos, se enteraron de que la persona que manejaba era un conductor no autorizado y, en ese momento, se encontraba bajo un privilegio de probatoria[48]; además, el pasajero se mostró poco cooperativo[49] con la intervención policial y ambos realizaban movimientos sospechosos dentro del auto mientras eran entrevistados[50]. Debido a ello, los agentes procedieron a impartirles las advertencias de ley para arrestarlos.[51] Mientras realizaban la pesquisa, se percataron de que un fuerte olor a marihuana emanaba del automóvil.[52] Por esto, los policías les avisaron a los individuos que sellarían y ocuparían el vehículo para que este fuera registrado luego de que un tribunal emitiera la correspondiente orden debido a que estos sospechaban que había una sustancia controlada ilícita dentro del carro.[53] Ulteriormente, luego de que se emitiera la orden, se registró el vehículo y se

---

[47] Transcripción de la prueba oral (TPO) del juicio en su fondo celebrado el 4 de noviembre de 2024, pág. 15, líneas 21-23; pág. 23, líneas 6-13; pág. 29, líneas 8-18.

[48] *Íd.,* pág. 15, línea 24; pág. 16, línea 1-4; pág. 21, líneas 2-4; pág. 31, líneas 3-6.

[49] *Íd.,* pág. 16, línea 13-18; pág. 22, líneas 1-7.

[50] *Íd.,* pág. 30, líneas 1-14.

[51] *Íd.,* pág. 21, línea 24; pág. 25, línea 1.

[52] *Íd.,* pág. 16, línea 9-11; pág. 21, líneas 20-22; pág. 30, líneas 17-19.

[53] *Íd.,* pág. 16, líneas 18-22; pág. 17, líneas 13-15; pág. 20, líneas 18-24; pág. 31, líneas 8-12.

encontraron, entre otras cosas, un arma de fuego 9mm sin número de serie con sus municiones y cocaína en su modalidad de *crack*.[54]

Según hemos discutido, un registro se presume como legal si se hace tras la expedición de una orden judicial basada en causa probable; este principio general aplica estatutariamente a las confiscaciones realizadas por el Estado. El Estado tiene la potestad de confiscar aquel vehículo o medio de transportación que se utilice para la comisión de un delito sin necesidad de restitución. En lo que concierne a este caso, pueden incautar un vehículo que se utilice para violentar los preceptos comprendidos en la *Ley de Sustancias Controladas de Puerto Rico*, supra. La presunción de corrección y legalidad que cobija a las confiscaciones, al ser una controvertible, puede ser rebatida con prueba en contrario.

En este caso, se expidió una orden judicial antes de registrar el vehículo basado en el hecho de que los agentes percibieron un fuerte olor a marihuana que emanaba del automóvil durante el arresto. Este sería el motivo fundado o causa probable que suscitó la emisión de la orden de registro por el tribunal. Empero, al registrar el vehículo, las autoridades no hallaron la sustancia controlada conocida como marihuana, según esperaban, pero sí **encontraron cocaína en su modalidad de *crack* y un arma de fuego de calibre 9 mm sin número de serie junto con sus respectivas municiones**. Tras ello, se presentaron los cargos correspondientes contra los involucrados. El hecho de que no había marihuana en el automóvil no implica que la orden de registro o que la confiscación era ilegal, debido a que estas no carecían de motivos fundados y mucho menos supone que no se utilizó el auto en la comisión de un delito.

---

[54] *Íd.,* pág. 26, líneas 4-7; pág. 34, líneas 2-24; pág. 35, líneas 1-5. Testimonio del agente Edwin Del Valle Caraballo en relación con el resultado de la prueba de campo de la sustancia ocupada, pág. 40, líneas 19-20; pág. 41, líneas 15-24; pág. 42, líneas 1-5.

Luego del examen de los documentos y la transcripción de la prueba oral del juicio en su fondo, colegimos que el foro primario no incidió en su determinación de que no procedía devolverle el vehículo a Universal y Popular Auto, debido a que el automóvil fue utilizado en la comisión de delitos de naturaleza grave. Coincidimos con el TPI en su conclusión de que Universal y Popular Auto no lograron rebatir la presunción de corrección que cobija a la confiscación realizada con la prueba presentada, por lo cual no procedía la demanda de impugnación del acto policial.

En consecuencia, se confirma la fundamentada *Sentencia* apelada.

## IV.

En virtud de lo anterior, *se confirma* la *Sentencia* apelada.

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones